NO. 82-393

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

PHILLIP HARRIS,

Defendant and Appellant.

---

Appeal from:   District Court of the Sixteenth Judicial District
               In and for the County of Custer
               Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Leonard J. Haxby, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Keith D. Haker, County Attorney, Miles City, Montana

---

Submitted on briefs:  February 2, 1984

Decided:  May 9, 1984

Filed: MAY 9 1984

<u>Clerk</u>

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Phillip Harris appeals from a judgment entered in the District Court for the Sixteenth Judicial District, Custer County. The judgment followed a jury verdict finding Harris guilty of aggravated assault. We affirm the conviction.

On September 6, 1981, Gordon Arthur was shot in the left knee with a shotgun outside the Wild Horse Pavilion bar east of Miles City. Arthur had stopped there after spending the day in Bainville; he was on his way to Billings. According to Arthur, he had numerous drinks at the Wild Horse while visiting with the bartender (the defendant in this case), Phillip Harris, and other patrons. During this time, Arthur also told someone that he had a gun in his pickup.

Arthur testified that he had gone out the door of the bar when he heard someone say "Turn around." Arthur turned around and saw Harris standing with a shotgun pointed between Arthur's eyes. Harris lowered the gun to Arthur's stomach and then his leg. The gun was discharged while positioned approximately a foot from Arthur's leg. Arthur's testimony was that he then heard a voice asking, "Why the hell did you shoot him, Phil?" and the response "Nobody says that they are going to go out in their pickup and get a gun and come back into my watering-hole establishment."

A jury found Harris guilty of aggravated assault; he appeals, raising the following issues:

1. Did the District Court err by denying Harris' motion for a continuance to allow additional time to locate a witness?

2. Was Harris deprived of effective assistance of counsel, as guaranteed by the federal and state

- 2 -

constitutions, because of a failure to procure a material witness?

3. Did the District Court err by giving a jury instruction on the effect of voluntary intoxication on Harris' mental state?

4. Was the State guilty of prosecutorial misconduct as a result of certain statements made in the opening and closing arguments?

On June 15, 1982, the morning of the trial in this case, the District Court heard argument on Harris' motion for continuance filed June 11. Harris claimed that he needed additional time to locate a nurse who tended to ~~Harris~~ *Arthur* at the hospital on September 6, 1981. It was believed that the nurse's testimony would be that ~~Harris~~ *Arthur* made an admission while in the hospital, to the effect that the gunshot wound was self-inflicted. While arguing the motion, Harris' counsel declared that he knew the name of the nurse, that she had moved out of the state, and that he had attempted to locate her by phone and by checking the hospitals in the Wisconsin town where her lawyers were located.

Harris contends that the District Court should have granted the motion for a continuance, as the nurse's testimony would have been material to Harris' case. He claims his case was unduly prejudiced by the denial.

Harris also contends that the failure of his trial counsel to secure the nurse's testimony was a denial of his constitutional right to effective assistance of counsel. He argues that the production of a witness who would totally contradict the State's case was necessary to the preparation of an adequate defense.

The State argues that the continuance was properly denied because (1) according to section 46-13-202, MCA, it was within the District Court's discretion to deny the motion; (2) Harris did not show that due diligence in attempting to locate the nurse was exercised; (3) there was no factual basis offered for Harris' claim as to what the nurse would say; (4) there was no showing that the nurse would be willing to testify; (5) there was no prejudice shown to Harris' case resulting from the denial of the motion; and (6) there was no showing that Wisconsin would enforce a subpoena issued to compel the nurse's testimony.

Section 46-13-202, provides:

"Motion for continuance. (1) The defendant or the state may move for a continuance. If the motion is made more than 30 days after arraignment or at any time after trial has begun, the court may require that it be supported by affidavit.

"(2) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.

"(3) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant. This section shall be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the state to a speedy trial."

Because the statute leaves the granting of a continuance to the discretion of the trial court, we must look only for an abuse of discretion. We find none. As noted by the State, the only basis in the record for the motion for a continuance was a belief by Harris and his counsel that there was a nurse who attended Arthur at the hospital and who might offer testimony as to admissions by Arthur regarding the gunshot wound.

The record shows that the District Court properly considered the diligence of Harris in procuring the witness

- 4 -

in light of the amount of time which had passed since the incident took place. The record also shows there were no assurances given to the trial court that the nurse would be located in a reasonable time or that her testimony would be as Harris and his counsel believed it would be. We do not find an abuse of discretion where the motion for continuance is so void of specific allegations and support. State v. DiGiallonardo (1972), 160 Mont. 379, 503 P.2d 43.

That brings us to the second issue and to the conclusion that Harris' claim of ineffective assistance of counsel is not supported by the record. He claims that his trial counsel's failure to procure the nurse's testimony at trial constituted ineffective assistance of counsel in violation of his constitutional rights. Harris does not contend that his trial counsel was not generally diligent in representing him.

Given the circumstances surrounding Harris' trial counsel's failure to procure the nurse's testimony, discussed above, we find Harris' argument unpersuasive. In State v. Rose (Mont. 1980), 608 P.2d 1074, 1081, 37 St.Rep. 642, 649-50, this Court adopted the following test to determine whether a defendant has been denied effective assistance of counsel:

> "'Persons accused of crime are entitled to the effective assistance of counsel acting within the range of competence demanded of attorneys in criminal cases.'"

We have read the record in this case and determined that the assistance given by Harris' trial counsel was within the range of competence demanded in criminal cases.

Harris raises a third issue of whether the District Court erred by giving the following jury instruction:

> "An intoxicated condition may be taken into consideration in determining the existence of a

mental state which is an element of the offense, but an intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting purposely or knowingly."

The instruction uses language similar to that found in the following statute:

"45-2-203. Responsibility--intoxicated or drugged condition. A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. An intoxicated or drugged condition may be taken into consideration in determining the existence of a mental state which is an element of the offense."

Harris testified that he had been drinking the day of the shooting, but contends that the instruction was confusing to the jury and improper as intoxication was not an issue in the case.

The record includes evidence of Harris' drinking and therefore supports the giving of the instruction. State v. Kirkaldie (1978), 179 Mont. 283, 587 P.2d 1298; State v. Miner (1976), 169 Mont. 260, 546 P.2d 252. Furthermore, Harris has failed to show prejudice to his case resulting from the giving of the instruction and he has failed to show that it affected his substantial rights. Thus, we find no error by the District Court in giving the instruction.

The final issue of this case involves statements made by the prosecutor during his opening and closing statements to the jury. Harris contends that the comments prejudiced his case and thereby violated his rights to due process and equal protection. He argues that, although no objection was made by defense counsel at the time, this Court should see the "plain error" and reverse his conviction.

The relevant statements made by the prosecutor include comments as to the truthfulness and credibility of the

witnesses, a comment as to the alleged prostitution occurring at the Wild Horse Pavilion, a comment as to how the Red Brigade outfit in Italy would intimidate people by shooting them in the kneecaps, and a comment about the potential intimidation of Gordon Arthur by Phillip Harris.

No objection was made by the defense during either the prosecutor's opening or closing statements. A lack of objection does not preclude us from considering any error at the trial court level which affects the substantial rights of a defendant. Section 46-20-702, MCA; Rule 103, M.R.Evid.; Halldorson v. Halldorson (1977), 573 P.2d 169, 175 Mont. 170.

In State v. Gladue (Mont. 1984), ___ P.2d ___, 41 St.Rep. 249, this Court discussed the standards used to decide whether a prosecutor's comments as to a defendant's not taking the witness stand were such as to require reversal of a conviction. In Gladue, we held that reversal is required where the Court cannot say, beyond a reasonable doubt, that the prosecutor's comments did not contribute to a guilty verdict.

In this case, we are not faced with comments which allegedly or potentially infringe on a defendant's right to not testify. In fact, the alleged error here did not affect any of the defendant's substantial or constitutional rights. The State was free to comment to the jury regarding the credibility and truthfulness of the witnesses, to the extent that it is within the jury's purview to judge the witnesses' credibility and truthfulness. The remainder of the remarks also does not require reversal. We do not condone them, for they could be highly prejudicial under other circumstances; but here we find that they did not affect any of Harris' substantial rights and were at most harmless error.

- 7 -

The judgment is affirmed.

_____
                   Justice

We Concur:

_____
    Chief Justice

_____

_____

_____
      Justices