No. 86-222

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

DONALD P. WALKER, a/k/a BUZZ,

        Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Allen Beck, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
James M. Scheier, Asst. Atty. General, Helena
Harold Hanser, County Attorney, Billings, Montana

Submitted on Briefs: Oct. 23, 1986

Decided:   February 26, 1987

Filed: FEB 26 1987

*Ethel M. Harrison*

———————————————————
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Walker appeals a jury conviction for the criminal sale of dangerous drugs. On March 13, 1986, the Thirteenth Judicial District Court, Yellowstone County, sentenced Walker to seven years in the Montana State Prison.

We affirm.

Walker raises three issues for our review:

1. Did the District Court err when it denied Walker's third motion for a continuance?

2. Did the District Court violate Walker's right to a speedy trial?

3. Did the District Court err when it gave the State's jury instruction on entrapment?

Walker was arrested on July 29, 1985, for selling a quarter-pound of marijuana to a police agent. On July 31, 1985, the State filed an information charging Walker with a violation of § 45-9-101, MCA, for the criminal sale of dangerous drugs. Walker was indigent, so the District Court appointed Allen Beck as his public defender. Walker's trial was originally set for November 12, 1985. However, on the morning of trial, Mr. Beck moved for a continuance because of scheduling conflicts. The District Court granted his motion and reset trial for January 6, 1986. On January 3, 1986, Mr. Beck moved for another continuance because of scheduling conflicts. The court again granted his motion and reset trial for February 4, 1986.

On the afternoon of February 3, 1986, Mr. Beck moved for another continuance because of witness unavailability. The next morning, immediately before trial, Mr. Beck also moved for a dismissal for lack of a speedy trial. The District Court denied both motions. Trial began as scheduled on February 4, 1986. The jury convicted Walker on February 7, 1986.

2

## Issue 1

Did the District Court err when it denied Walker's third motion for a continuance?

Walker filed his third motion for continuance one day before trial. He requested additional time to locate unidentified witnesses at unidentified addresses who could possibly support his entrapment defense. Mr. Beck stated in his motion:

> With regard to said witnesses, Mr. Walker is reluctant to disclose their names to Allen Beck, unless he (Donald Walker) first discusses the matter with them . . . The witnesses in question are with no telephone numbers and can only be reached through mutual acquaintances. These persons are in the following cities: Denver, Great Falls, and Orlando, Florida, to the best of Mr. Walker's knowledge, information and belief.

Judge Baugh asked Mr. Beck:

> With regard to the motion for continuance, I hear talk about witnesses. I don't know what these witnesses can say. I don't know where these witnesses are. Maybe even Mr. Walker doesn't know precisely where they are . . . Do these people have names? Do they have locations? Has Mr. Walker related to you what these witnesses are supposed to be able to say?

Mr. Beck replied that the absent witnesses might have testified that Walker was intoxicated, that the undercover agent repeatedly asked Walker for drugs, and that Walker's intoxication made him particularly susceptible to suggestion.

We note that Walker must show reasonable cause for the continuance. As we held in State v. Van Natta (1982), 200 Mont. 312, 321, 651 P.2d 57, 61: "Before a motion for a continuance is granted, the movant must show that he has

3

employed due diligence to procure that which he now requests additional time to procure."

Walker discussed witness procurement with Mr. Beck on February 1, 1986, three days before trial. The District Court asked Mr. Beck why Walker did not try to contact his witnesses through the mutual acquaintances. Mr. Beck replied:

> I think the best explanation of that came from Mr. Walker when I discussed it with him yesterday, and he said over the weekend, Mr. Beck, [there] is no time to try to reach these people because they are all out drinking. Is that correct Mr. Walker?
>
> [Walker]: Yes.
>
> [Beck]: These witnesses are intervening intermediaries, he was trying to contact our people on the Southside who unfortunately are intoxicated much of the time, is that correct sir?
>
> [Walker]: Quite a bit.
>
> [Beck]: He states that they are alcoholics and transient.
>
> [Walker]: Yes sir.

When Walker requested a continuance to locate absent witnesses, he assumed a dual burden. First, he needed to show that he had reasonably searched for his witnesses. Second, he needed to show that his witnesses' testimony could have helped his defense. State v. Harris (Mont. 1984), 682 P.2d 159, 161, 41 St.Rep. 866, 868-869. Walker offered no proof that the witnesses could have been located within a reasonable time. On the contrary, he was not even sure if they were in Denver, Great Falls, or Orlando. Walker also refused to identify the witnesses. Furthermore, the

4

unidentified witnesses could only be located through interme-diaries, who Walker also failed to identify. Even if the witnesses were somehow located through Walker's network of acquaintances, Walker offered no assurances that they could support his entrapment defense. Walker's "witness search" was neither timely nor credible. Walker failed to meet his burden of proof, by offering nothing but unsupported speculation.

Section 46-13-202(3), MCA, states:

> All motions for a continuance are ad-dressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant. This section shall be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the state to a speedy trial.

In light of the minimal diligence shown by Walker, the District Court properly denied his motion for a continuance. The District Court is under no obligation to repeatedly adjust its schedule to accommodate Walker's motions. The granting of a continuance by a District Court is discretion-ary, and not a matter of right with a defendant. Walker has failed to cite and support any specific instance of discre-tionary abuse. Absent a clear abuse of discretion, the court does not err when it denies such a motion. State v. Harvey (1979), 184 Mont. 423, 431, 603 P.2d 661, 666. We affirm the District Court's denial of Walker's motion for a continuance.

Issue 2

Did the District Court deny Walker a speedy trial?

We analyze speedy trial issues under a four-part test, which was first articulated in Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117.

5

Citing Barker in State v. Robbins (1985), 708 P.2d 227, 233, 42 St.Rep. 1440, 1445, we noted that the factors of the test are:

    (1) length of the delay;

    (2) reasons for the delay;

    (3) defendant's assertion of his right to a speedy trial; and

    (4) prejudice to the defendant.

These factors are related and "must be considered together with such other circumstances as may be relevant. The Court must still engage in a difficult and sensitive balancing process." State v. Larson (1981), 623 P.2d 954, 957, 38 St.Rep. 213, 215.

The length of delay, from the date of Walker's arrest to the date of his trial, was 189 days. When analyzing an acceptable length of delay, this Court will consider both the State's and the defendant's actions in the delay.

> For the State, the question is whether the prosecution was pursued with reasonable diligence . . . On the other side of the coin, it must be determined what percentage of the delay is chargeable to the defendant and this amount of time must accordingly be deducted from the total delay.

State v. Freeman (1979), 183 Mont. 334, 338-339, 599 P.2d 368, 371.

Walker's motions for continuances accounted for 83 days of the delay. But for Walker's motions, the delay would only have been 106 days. These 106 days are well within our acceptable delay limit. Robbins, 708 P.2d at 234, 42 St.Rep. at 1447; State v. Kelly (1983), 661 P.2d 26, 27, 40 St.Rep. 364, 365.

Walker did not assert his right to a speedy trial until the morning of trial. We recently upheld the denial of a

6

motion to dismiss for lack of a speedy trial, which was filed on the day of trial. State v. Cutner (1984), 692 P.2d 466, 468, 41 St.Rep. 2404, 2407. Walker's assertion was not timely, and the District Court properly denied his motion.

Walker also failed to show any unfair prejudice as a result of the District Court's denial of his motion. Although Walker was incarcerated for approximately six months prior to trial, incarceration alone is insufficient to prove prejudice. State v. Boyer (1984), 676 P.2d 787, 790, 41 St.Rep. 321, 324.

In summary, we will not allow Walker's motions for continuance to serve a secondary purpose as grounds for denial of the right to a speedy trial. We find no merit in his claim.

Issue 3

Did the District Court err when it gave the State's jury instruction on entrapment?

Court's Instruction No. 13 instructed the jury on the defense of entrapment, and is based upon a model instruction in Devitt and Blackmar, Federal Jury Practice and Instructions, § 13.09 (1977). Instruction 13 states:

> The issue of entrapment has been raised by the defendant. Where a person has no previous intent or purpose to commit the crime or sale of dangerous drugs, but is induced or persuaded by law enforcement officers or their agents to commit this crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.
>
> On the other hand, where a person already has the readiness and willingness to engage in the sale of dangerous drugs, the mere fact that law enforcement officers or their agents provided what appears to be a favorable

7

opportunity is not entrapment. When a law enforcement officer suspects that a person is engaged in the illegal sale of dangerous drugs, it is not entrapment for a law enforcement officer to pretend to be someone else and to offer, either directly or through an agent, to purchase dangerous drugs from the suspected person. The law, however, does not permit a law enforcement officer to originate or implant the criminal design of sale of dangerous drugs in a defendant's mind.

If, then the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit the crime of sale of dangerous drugs, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt that the defendant had the previous intent or purpose to commit the offense of the sale of dangerous drugs except for inducement or persuasion of some law enforcement officer or his agent, then it is your duty to find him not guilty. The burden is on the State or [sic] prove beyond reasonable doubt that the defendant was not entrapped.

Walker claims that Instruction 13 conflicts with § 45-2-213, MCA, which states:

A person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance

8

of criminal purpose which such person
has originated.

Walker argues that § 45-2-213, MCA, focuses on a defen-
dant's conduct which was "incited or induced by a public
servant," in contrast to Instruction 13, which focused on a
defendant's "readiness and willingness" to sell dangerous
drugs. Walker, therefore, contends that Instruction 13 is an
incorrect statement of the law and that it should have fo-
cused more forcefully on the police agent's "inducement."

We find that Instruction 13 fairly reflects the lan-
guage of § 45-5-213, MCA. In interpreting § 45-2-213, MCA,
we have set forth the following elements of entrapment:

(1) criminal intent or design originating in the mind
of the police or their agent;

(2) absence of criminal intent or design originating in
the mind of the accused; and

(3) luring or inducing the accused into committing a
crime he had no intention of committing.

State v. Kamrud (1980), 188 Mont. 100, 105, 611 P.2d
188, 191.

Section 45-2-213, MCA, provides a defendant with a
framework upon which to build an entrapment defense. Howev-
er, Walker failed to show any specific instance of entrapment
under any of the Kamrud elements. His defense consisted of
general speculation on possible entrapment. Walker objects
to the language of Instruction 13, which embodies the bal-
anced defense principles of § 45-2-213, MCA. After mediating
several compromises in the original language, the District
Court did not allow Walker to further distort the language of
Instruction 13 to conform to his entrapment defense.

Walker also failed to offer a written alternative to
Instruction 13, as required by § 46-16-401(4)(a), MCA: "When
the evidence is concluded, if either party desires special

instructions to be given to the jury, such instructions shall be reduced to writing, numbered, signed by the party or his attorney, and delivered to the court." We have held this statutory language to be mandatory. State v. Radi (1975), 168 Mont. 320, 325, 542 P.2d 1206, 1209-1210.

We hold that Instruction 13 is a correct statement of law. The police merely afforded Walker an opportunity to commit an offense. The criminal intent originated in Walker. We find that the instruction was proper, and Walker's objection has no merit.

We affirm the District Court on all issues.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_L. C. Gulbrandson_

Justices

Mr. Justice John C. Sheehy and Mr. Justice William E. Hunt, Sr.:

We concur in the result. We have doubt about the entrapment instruction.

_John C. Sheehy_
Justice

_William E. Hunt_
Justice