No. 88-194
88-621

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,
        Plaintiff and Respondent,
    -vs-
LELAND NEAL LAPIER,
        Defendant and Appellant,

STATE OF MONTANA, ex rel., LELAND NEAL LAPIER,
        Petitioner,
    -vs-
JACK McCORMICK, WARDEN OF MONTANA STATE PRISON,
        Respondent.

APPEAL FROM:    District Court of the Ninth Judicial District,
                In and for the County of Glacier,
                The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Sandra K. Watts, Florence, Arizona

        For Respondent:

                Hon. Marc Racicot, Attorney General, Helena, Montana
                Robert F. W. Smith, Asst. Atty. General, Helena
                James C. Nelson, County attorney, Cut Bank, Montana

                Submitted on Briefs:   February 1, 1990

                            Decided:   April 12, 1990

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Mr. LaPier appeals from his criminal convictions in the District Court of the Ninth Judicial District, Glacier County. In a jury trial, he was found guilty of aggravated burglary, aggravated kidnapping, and felony assault. Mr. LaPier was sentenced to thirty years for aggravated burglary, thirty years for aggravated kidnapping, to be served concurrently, and five years for felony assault, to be served consecutively. Mr. LaPier appeals the convictions. We affirm.

The issues are:

1. Did the District Court err in denying the defendant's motion to dismiss the information for lack of jurisdiction?

2. Was the defendant denied his right to confront the witnesses against him?

3. Did the District Court err in denying the defendant's motion for a continuance of trial?

4. Is the verdict inconsistent?

The incident out of which these charges arose occurred one night in August 1987. At about 10:30 p.m., the victims Richard Kurek, his ex-wife Angela, and his fiancee Shelley Boutier were watching television in Richard's home. Leland "Yackie" Thomas visited the house for a few minutes, then left. Mr. Kurek stated at trial that he didn't really understand why Mr. Thomas was visiting, as none of them knew him well. Following Mr. Thomas' visit, Richard and Angela Kurek went upstairs to fix the curtains in the room where Angela was to spend the night. They had been upstairs about five minutes when the dog began to bark and Shelley began to scream.

2

Mr. Kurek testified at trial that as he turned to leave the bedroom Mr. LaPier came up the stairs, entered the bedroom, and asked, "Where is it?" Mr. Kurek stated that Mr. Lapier threw him on the bed and demanded to know where the $7,000 was. Richard and Angela Kurek both testified that Mr. LaPier threatened to kill Mr. Kurek and struck him with his fists, then threw Mr. Kurek to the floor and began kicking him with his heavy logger boots. Mr. Kurek testified that he had not known Mr. LaPier prior to this incident.

Angela Kurek testified that at this point, she told Mr. LaPier that she had some money in the trunk of her car parked outside, and that Mr. LaPier told her to go get the money. Angela Kurek testified that when she got to the bottom of the stairs, she saw a man holding Shelley Boutier on the floor with his knee in her back and a handful of hair.

Angela Kurek stated that when she reached her car, she noticed that no one had followed her out of the house. She got into the car. A van had been parked to block the street entrance to the cul-de-sac where the house was located. By going over a neighbor's lawn she drove out of the cul-de-sac and went to notify the police.

Mr. Kurek testified that a second individual, later identified as Merlyn Thomas, joined Mr. LaPier in assaulting him. Mr. Kurek testified that Merlyn Thomas hit him in the head with the blade of a screwdriver, and that the two men forced him into an adjoining bedroom. He stated that Mr. LaPier continued to hit him while Merlyn Thomas stabbed him with the screwdriver. He testified that Mr. LaPier and Mr. Thomas then dragged him downstairs and outside, stating, "Let's burn him."

Mr. Kurek testified that he was then forced into the garage where Mr. Lapier said, "Let's off him." Mr. Kurek testified he later was able to get free and escape to a

3

neighbor's house. Mr. Kurek stated that he noticed Angela Kurek's car and a police car coming up the street. Angela Kurek testified that as she approached the house she saw two men run off. Shelley Boutier came out of a bathroom where she had been hiding.

Mr. Lapier, Leland Thomas and Merlyn Thomas were arrested the next day. Because they are members of the Blackfeet Tribe, the Thomases were tried in federal court. Mr. LaPier was tried in state court.

I

Did the District Court err in denying the defendant's motion to dismiss the information for lack of jurisdiction?

Prior to trial, on October 15, 1987, Mr. LaPier moved to dismiss the information based on lack of jurisdiction. He contended he was an Indian and that state courts lacked jurisdiction to prosecute a criminal offense committed by an Indian within the exterior boundaries of an Indian reservation. The District Court denied this motion. Mr. LaPier's direct appeal of the criminal convictions raised the jurisdictional issue. Mr. LaPier also presented this Court with a petition for habeas corpus raising the same issue. The direct appeal and petition for habeas corpus were consolidated and held in abeyance and the District Court was ordered to hold an evidentiary hearing in regard to Mr. LaPier's status as an Indian. Following this hearing, the District Court entered lengthy findings of fact and conclusions of law, concluding that Mr. LaPier was not an Indian for purposes of criminal offenses and that the state court had jurisdiction to prosecute. For appellate review, the parties have re-briefed the jurisdictional issue subsequent to the hearing.

Jurisdiction to prosecute criminal offenses committed on an Indian reservation is shared by three sovereign entities,

4

depending on the nature of the crime and whether the defendant and the victim are Indian or non-Indian. Clinton, Criminal Jurisdiction over Indian Lands: A Journey Through a Jurisdictional Maze, 18 Ariz. L.Rev. 503, 504-05, (1976). A tribal court has jurisdiction if both the defendant and the victim are Indian and the crime is not one listed in 18 U.S.C. § 1153. United States v. Antelope (1977), 430 U.S. 641, 97 S.Ct. 1395, 51 L.Ed.2d 701. Federal courts have jurisdiction pursuant to several statutes, such as the Major Crimes Act, 18 U.S.C. § 1153.

Generally, state courts lack jurisdiction to prosecute an offense committed within the exterior boundaries of an Indian reservation where the defendant is an Indian, or where the victim is an Indian. State v. Greenwalt (1983), 204 Mont. 196, 663 P.2d 1178. The State of Montana does have jurisdiction to prosecute criminal offenses committed within the exterior boundaries of the reservation if neither the defendant nor the victim is Indian. United States v. McBratney (1881), 104 U.S. 621, 26 L.Ed. 869; Draper v. United States (1896), 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419; New York ex rel Ray v. Martin (1946), 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261; United States v. Wheeler (1978), 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303; Antelope. In the present case, the offenses occurred within the exterior boundaries of the Blackfeet Indian Reservation. The victim was non-Indian. Thus the jurisdictional issue turns on whether Mr. LaPier is an "Indian" for purposes of criminal jurisdiction.

Congress has not defined "Indian" as it is used in the statutes governing criminal jurisdiction, and no precise formula exists for determining Indian status. St. Cloud v. United States (D.S.D. 1988), 702 F.Supp 1456; Clinton, p. 515. Federal jurisdiction over Indians is premised upon

5

their special status as wards of the federal government. State ex rel. Irvine v. District Court (1951), 125 Mont. 398, 404, 239 P.2d 272, 275-76. If one who is Indian by race becomes "emancipated in some manner, as, for example, by severing tribal relations and taking on civilized habits," the status may terminate. People v. Carmen (Cal. 1954), 273 P.2d 521, 525; State v. Attebery (Ariz. 1974), 519 P.2d 53, 54-55; Clinton, p. 517.

The test suggested in United States v. Rogers (1846), 45 U.S. (4 How.) 567, 11 L.Ed. 1105, has been frequently cited in determining Indian status. This test is two-pronged: 1) the defendant must have a significant amount of Indian blood, and 2) the defendant must have federal or tribal recognition as an Indian. United States v. Dodge (8th Cir. 1976), 538 F.2d 770, 786, cert. denied, 429 U.S. 1099 (1977). Attebery, 519 P.2d at 54; F. Cohen, Handbook of Federal Indian Law 24 (1982). The second prong of this test, recognition as an Indian, has also been stated as "a sufficient non-racial link to a formerly sovereign people." St Cloud, 702 F.Supp at 1461. The St. Cloud court elaborated upon the second prong of the Rogers test, as follows:

> This Court nonetheless has gleaned from case law several factors to evaluate whether a person satis-fies the second prong of Rogers. In declining order of importance, these factors are: 1) enroll-ment in a tribe; 2) government recognition formally and informally through providing the person assis-tance reserved only to Indians; 3) enjoying bene-fits of tribal affiliation; and 4) social recognition as an Indian through living on a reser-vation and participating in Indian social life. These factors do not establish a precise formula for determining who is an Indian. Rather, they merely guide the analysis of whether a person is recognized as an Indian.

St. Cloud, 702 F.Supp. at 1461.

We expressly adopt the foregoing test.

The evidentiary hearing in the present case was held March 31, 1989. Mr. LaPier testified at this hearing in addition to numerous other witnesses. The testimony and exhibits established the following facts relevant to Mr. LaPier's status. First, Mr. LaPier is not an enrolled member of any tribe. He possesses 165/512 of Indian blood derived from the Little Shell Band of Landless Chippewa Indians of Montana, and the Turtle Mountain Band of Chippewas. Mr. LaPier is "affiliated" with these tribes. The people comprising these tribes are referred to as Pembinas. Mr. LaPier is a Pembina descendant.

The Little Shell Band of Landless Chippewas is not a federally recognized tribe; however they have a petition for federal recognition pending with the Bureau of Indian Affairs. The Turtle Mountain Band is a federally recognized tribe. Both tribes have an enrolled membership. Mr. LaPier is not eligible for membership in the Turtle Mountain Band and trial testimony was conflicting as to whether he would be eligible for membership in the Little Shell Band. Mr. LaPier's mother is an enrolled member of the Little Shell Band of Chippewas. Mr. LaPier's father is a non-Indian. Mr. LaPier had not applied for enrollment in either tribe at the date of the hearing.

Mr. LaPier was raised in Great Falls and Billings, Montana, and attended public schools. He spent some summers in Browning, Montana, on an Indian reservation. He also lived in Browning his last year of high school. Mr. LaPier attended Haskell Junior College in Lawrence, Kansas, which is an Indian college sponsored by the Bureau of Indian Affairs (BIA). Haskell admits persons of one-fourth or more Indian

7

blood and the federal government pays the student's educational expenses.

Mr. LaPier received some educational benefits from the Great Falls Native American Center, and on a few occasions he received medical assistance from the Indian Health Services at Rocky Boy Reservation. As a Pembina descendant, Mr. LaPier received $1700 from a judgment received by the Pembinas on a claim against the federal government.

Mr. LaPier has been prosecuted in tribal courts for criminal offenses, and was also prosecuted as an Indian in Montana federal court for the offense of theft.

Mr. LaPier has been employed on an all-Indian fire fighting crew, and has occasionally played basketball on all-Indian basketball teams. Socially, Mr. LaPier counts among his friends both Indians and non-Indians. He has occasionally attended Browning Indian Days, and has attended Indian "give aways."

Applying the Rogers test to the facts of the present case, it is apparent that Mr. LaPier has a significant amount of Indian blood, and the State does not dispute this. Other courts have found similar percentages of Indian blood to satisfy the first prong of the Rogers test. Cf, St. Cloud, 702 F.Supp. at 1460 (15/32 of Indian blood satisfied requirement); Goforth v. State (Okla.Crim.App. 1982), 644 P.2d 114, 116 (slightly less than one-quarter Indian blood satisfied requirement); Makah Indian Tribe v. Clallam County (Wash. 1968), 440 P.2d 442 (one-fourth Indian blood satisfied requirement).

In analyzing the second prong of the Rogers test, we adopt the factors utilized by the St. Cloud court. Applying these factors to the present case, we note that Mr. LaPier is not an enrolled member of any tribe and has not applied for enrollment. However, the fact that Mr. LaPier is not

8

enrolled in any tribe may not be determinative of Indian status. Ex. Parte Pero (7th Cir. 1938), 99 F.2d 28, cert. denied, 306 U.S. 643 (1939); United States v. Broncheau (9th Cir. 1979), 597 F.2d 1260, cert. denied, 444 U.S. 859 (1979); United States v. Indian Boy X (9th Cir. 1977), 565 F.2d 585, cert. denied, 439 U.S. 841 (1978), United States v. Ives (9th Cir. 1974), 504 F.2d 935, vacated on other grounds, 421 U.S. 944 (1975). Mr. LaPier's lack of enrollment is, however, a significant factor which must be considered.

Of the two tribes with which Mr. LaPier is affiliated, he is not eligible for enrollment in the tribe which is federally recognized, the Turtle Mountain tribe. Mr. LaPier is possibly eligible for enrollment in the Landless Chippewa tribe; however, this tribe is not federally recognized. Thus, Mr. LaPier has no federal recognition as an Indian and no trust relationship with the federal government.

We note that Mr. LaPier has received some government assistance as an Indian. He attended a BIA-sponsored college, and received some educational assistance through the Native American program in the Great Falls Public Schools. He has also received some health benefits through Indian health services, although these services were not reserved solely for Indians. The money judgment received by Mr. LaPier from the federal government was simply a result of his Pembina descendancy and adds nothing to our analysis. Neither is it significant to the present issue that Mr. LaPier was treated as an Indian in federal court.

Mr. LaPier spent a few summers and his last year of high school on the Blackfeet Reservation, however, he has lived most of his life off the reservation. Although Mr. LaPier has on a few occasions attended tribal events, and was part of an all-Indian fire crew and basketball team, these activities alone do not clothe Mr. Lapier with Indian status. The

evidence demonstrates that Mr. LaPier's tribal affiliation and social recognition as an Indian is tenuous at best. Overall, the record reveals an integration into non-Indian society, and an absence of cultural identity as an Indian. Mr. LaPier has failed to demonstrate a sufficient non-racial link identifying him as an Indian. Using the St. Cloud factors to guide our analysis, we conclude that the second prong of the Rogers test has not been met.

Mr. LaPier relies on St. Cloud to support his claim that he is an Indian under the second prong of the Rogers test. In St. Cloud the defendant was indicted in federal court on counts of rape and sodomy. St. Cloud contended that the federal court lacked jurisdiction to prosecute him, urging that he was not an Indian. St. Cloud was virtually a full-blooded Native American, enrolled in the Ponca tribe. He was recognized as an Indian, lived as an Indian, and was not integrated into non-Indian society. He had participated in tribal alcohol treatment and counseling programs and had occasionally benefited from Indian health care. Considering just these factors, the court concluded that under the Rogers test, St. Cloud was an Indian. The court stated that "[g]enerally, an ethnic Indian with ties to a tribe like St. Cloud comes within the group of individuals to whom the Government bears a special fiduciary responsibility." St. Cloud, 702 F.Supp. at 1462. The court ultimately held however, that St. Cloud was subject to state jurisdiction, stating:

> However, because St. Cloud was an enrolled member of the Ponca tribe at termination, the Ponca termination statute ended the federal trust relationship with St. Cloud and explicitly exposed St. Cloud to state law as is any other state citizen.

10

St. Cloud, 702 F.Supp. at 1466.

Mr. LaPier contends that the facts in St. Cloud, which attributed Indian status to that defendant, are analogous to the facts in the present case. Mr. LaPier misunderstands the cultural identity requirement. The St. Cloud court determined that the defendant in that case had achieved social recognition as an Indian, stating:

> St. Cloud is socially recognized as an Indian. He lives on the Lower Brule Indian Reservation in federally provided housing, is a member of the Indian community, and participates in Indian social life. St. Cloud identifies himself as an Indian, and is not at all integrated into non-Indian society.

St. Cloud, 702 F.Supp. at 1462. The present case is easily distinguishable since the facts of St. Cloud indicating Indian status are lacking in the present case.

We hold that Mr. LaPier is not an Indian for purposes of criminal jurisdiction. We affirm the District Court's denial of the motion to dismiss based on lack of jurisdiction.

II

Was defendant denied his right to confront the witnesses against him?

Mr. LaPier presents two bases for his asserted denial of the right of confrontation. First, he contends the information filed against him was based on information given by Leland Thomas, whom he was unable to confront as a witness. The affidavit filed by the county attorney in support of a motion for leave to file an information contained a lengthy statement of allegations, over four pages in length. In these allegations the county attorney referred to a statement made by Leland Thomas. Both Leland Thomas and Merlyn Thomas were charged in federal court for their alleged involvement in the assault on Richard Kurek. At Mr. LaPier's trial Mr.

11

Leland Thomas and Mr. Merlyn Thomas invoked their Fifth Amendment right against self-incrimination.

Mr. LaPier relies on Pointer v. Texas (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, as authority that he was denied a right of confrontation. In Pointer a witness testified at a preliminary hearing but was not cross-examined. The witness was unavailable at trial and the transcript of the preliminary hearing was introduced as evidence. On appeal, the United States Supreme Court held that this was a denial of the right of confrontation. Pointer is not analogous to the present case. The affidavit in support of the motion to file an information was not used as part of the evidence to convict Mr. LaPier, and presents no basis for his asserted denial of the right of confrontation.

As a second basis for his asserted denial of the right of confrontation, Mr. LaPier contends that the two Thomas brothers should have been compelled to testify at his trial. The record, however, fails to demonstrate that Mr. LaPier raised this issue at District Court. We will not address on appeal an issue not raised at District Court. State v. Howie (1987), 228 Mont. 497, 500, 744 P.2d 156, 158. Mr. LaPier has presented no basis for his asserted denial of the right of confrontation. We conclude he was not denied this constitutional right.

### III

Did the District Court err in denying the defendant's motion for a continuance of trial?

Trial in this case was set for October 26, 1987. Five days before trial Mr. LaPier moved for a continuance. The motion was denied; however, the District Court appointed co-counsel to assist with the trial. Mr. LaPier contends this denial prejudiced him in presenting his defense.

The District Court may order a continuance if the interests of justice so require; however, a motion of this type is addressed to the discretion of the trial court taking into consideration the diligence of the movant. Section 46-13-202, MCA; Sloan v. State (Mont. 1989), 768 P.2d 1365, 1369, 46 St.Rep. 214, 218. On appeal this Court determines if the district court abused its discretion in denying the continuance. State v. Walker (1987), 225 Mont. 415, 419, 733 P.2d 352, 355.

Mr. LaPier contends the continuance should have been granted to allow his special investigator more time to investigate. Mr. LaPier also contends that had his trial been postponed, the Thomas brothers would have concluded their cases in federal court and could have been subpoenaed to testify without the problem of self-incrimination. Mr. LaPier did not present this latter contention to the District Court in his motion for a continuance. On appeal, Mr. LaPier may not change the basis of his motion. State v. Sunday (1980), 187 Mont. 292, 302, 609 P.2d 1188, 1195. We therefore will not address his contention in regard to the Thomas brothers.

The State opposed the continuance, noting that the request was not timely; that Mr. LaPier had possessed nearly all relevant discovery since September 1st, 1987; that Mr. LaPier had not been diligent in trial preparation; and that a postponement would inconvenience many witnesses. Mr. LaPier has failed to present facts to this Court demonstrating any prejudice which would deny him a fair trial. We conclude that the District Court did not abuse its discretion in denying the motion. We affirm the District Court's denial of the motion for a continuance.

13

## IV

Is the verdict inconsistent?

The jury returned a verdict finding Mr. LaPier guilty of aggravated burglary, aggravated kidnapping, and felony assault. To the charges of robbery and theft, the jury found Mr. LaPier not guilty.

Mr. LaPier contends that it was inconsistent for the jury to find him not guilty of robbery, yet guilty of aggravated burglary and guilty of aggravated kidnapping. He refers to Jury Instruction No. 16, which instructed the jury that in order to convict Mr. LaPier of aggravated burglary, it must find that Mr. LaPier entered the victim's residence with the purpose to commit robbery, and that in the course of committing the robbery he knowingly or purposely inflicted bodily injury upon Richard Kurek. He also refers to Jury Instruction No. 21, which instructed the jury that in order to find Mr. LaPier guilty of aggravated kidnapping, it must find that Mr. LaPier restrained the victim with the purpose to commit robbery. Mr. LaPier contends that since the jury found him not guilty of robbery, it could not consistently find him guilty of aggravated burglary and aggravated kidnapping.

The jury instructions enumerated the statutory requirements for the offense of aggravated kidnapping pursuant to § 45-5-303(1)(b), MCA, and for the offense of aggravated burglary, pursuant to § 45-6-204(2)(b), MCA. Mr. LaPier does not contend that the jury was incorrectly instructed. The Jury Instructions Nos. 16 and 21 contained the statutory requirement that Mr. LaPier have a purpose to commit a certain offense, in this case, robbery. Under these instructions the jury was only required to find the defendant had the purpose to commit a robbery, but was not required to find a robbery was committed. While Instruction No. 16 required the jury to find that in the course of committing a robbery

14

defendant inflicted bodily injury upon the victim, this instruction does not necessitate a jury finding that defendant completed the robbery. We conclude that the verdict is not inconsistent and that there is no merit to Mr. LaPier's contention.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

15