# STATE OF MONTANA,
## Plaintiff and Respondent,
### v.
# RAY DEAN JOHNSTON,
## Defendant and Appellant.

No. 93-281.
Submitted on Briefs April 27, 1995.
Decided June 15, 1995.
52 St.Rep. 490.
271 Mont. 385.
897 P.2d 1073.

386

For Appellant: **Marcia M. Jacobson**, Public Defender Office, Missoula.

For Respondent: **Hon. Joseph P. Mazurek**, Attorney General, **Jennifer Anders**, Assistant Attorney General, Helena; **Robert L. "Dusty" Deschamps III**, Missoula County Attorney, **Karen Town-send**, Deputy County Attorney, Missoula.

JUSTICE TRIEWEILER delivered the Opinion of the Court.

The defendant, Ray Dean Johnston, was charged in the District Court for the Fourth Judicial District in Missoula County with sexual intercourse without consent, in violation of § 45-5-503, MCA, and aggravated burglary, in violation of § 45-6-204, MCA. After a trial by jury, Johnston was found guilty of the crimes charged. Johnston appeals from his conviction. We affirm the judgment of the District Court.

The following issues are raised on appeal:

1. Was there probable cause for issuance of the search warrant pursuant to which law enforcement officers gathered samples of Johnston's hair and bodily fluids?

2. Did the District Court err when it denied Johnston's motion for a continuance of the trial?

## FACTUAL BACKGROUND

On May 11, 1992, Johnston was charged by information with sexual intercourse without consent, in violation of § 45-5-503, MCA, and aggravated burglary, in violation of § 45-6-204, MCA. The issues raised by those charges, and Johnston's denial, were the subject of a trial by jury that began on November 30, 1992.

At trial, Connie Pearson testified that on November 14, 1990, she was sick and that her friend Dan Coons, who was visiting, left to go to the store to get her some throat lozenges. While Coons was gone, Pearson heard a noise at her front door and thought it was Coons returning from the store. However, when she opened the door, she saw a masked man wearing gloves and holding a long-bladed knife, which resembled a hunting knife.

Pearson testified that the man told her if she screamed, he would hurt her son, who was asleep in the trailer. Pearson testified that this man then took her to the back bedroom, pushed her head into the bed, and raped her. Pearson said that she called 911 and later went to the hospital, where she was examined.

When Pearson was asked by law enforcement officers to name possible suspects, one of the persons she named was an individual she knew as "Ray Dean" who had previously been in her home. Pearson identified Johnston as the Ray Dean she knew from a photo lineup.

Detective Tom Lewis of the Missoula County Sheriff's Department investigated Johnston's background and determined that he had been convicted in the past of assaults that were committed in a similar manner. In order to continue his investigation of Johnston, he sought

a search warrant which would authorize him to recover samples of Johnston's hair and bodily fluids. That warrant was issued, the evidence was gathered, and based on a comparison of Johnston's bodily fluids and bodily fluids found on Pearson following the reported assault, DNA evidence was offered at the time of trial which connected Johnston to the assault. In response to the DNA evidence, Johnston testified at trial that he had had consensual intercourse with Pearson on the date on which she reported the forced intercourse.

## *ISSUE 1*

██ Was there probable cause for issuance of the search warrant pursuant to which law enforcement officers gathered samples of Johnston's hair and bodily fluids?

Article II, Section 11, of the Montana Constitution, and the Fourth Amendment to the United States Constitution, protect Montana citizens from unreasonable searches and seizures. The United States Supreme Court held in *Schmerber v. California* (1966), 384 U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908, 918, that the procedures employed for obtaining bodily fluids from an individual involve an intrusion into the zone of privacy and a seizure of the person protected by the Fourth Amendment against unreasonable searches and seizures.

For these reasons, Johnston moved the District Court to suppress the evidence which resulted from the collection of his hair and bodily fluids on the basis that those items were seized from him pursuant to a warrant which was issued without probable cause.

██ We review applications for a search warrant to insure that the magistrate or judge who issued the warrant had a substantial basis for concluding that probable cause existed for its issuance. *State v. Rinehart* (1993), 262 Mont. 204, 864 P.2d 1219. However, we do not review the application itself *de novo*. *Rinehart*, 864 P.2d at 1223.

██ We have held that the "totality of the circumstances" test set forth in *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527, is used to determine whether probable cause supports the issuance of a search warrant. *State v. Hulbert* (1994), 265 Mont. 317, 321, 877 P.2d 25, 27 (citing *State v. Neely* (1993), 261 Mont. 369, 372, 862 P.2d 1109, 1110). Probable cause is the probability of criminal activity. A *prima facie* showing of criminal activity need not be shown. *State v. Sundberg* (1988), 235 Mont. 115, 119, 765 P.2d 736, 739 (citing *Spinelli v. United States* (1969), 393 U.S. 410, 419, 89 S. Ct. 584, 590, 21 L. Ed. 2d 637, 645).

██ We have also held that probable cause must be established from the information contained within the four corners of the search warrant application. *Rinehart*, 864 P.2d at 1223 (citing *State v. Isom* (1982), 196 Mont. 330, 341, 641 P.2d 417, 423).

In this case, the State sought a warrant authorizing it to gather blood, pubic hair, head hair, saliva, and urine from Johnston. In support of that application, the State provided an affidavit from Detective Lewis which included the following information:

1. On November 14, 1990, the sheriff's office investigated an alleged rape at the residence of the reported victim. She described her assailant as an unknown male who entered her trailer with a knife, and who had on a stocking mask over his face, gloves over his hands, and dark clothing.

2. A person known to the victim as "Ray Dean," had, on numerous prior occasions, asked her out and had come to her trailer on two prior occasions to do so.

3. The person known to the victim as "Ray Dean" matched the physical description of the reported assailant. Through a photo lineup, Lewis determined that "Ray Dean" was Ray Dean Johnston.

4. Based on a criminal history background check, Lewis determined that Ray Dean Johnston had:

a. committed a prior aggravated assault and burglary in Missoula in 1977 when he entered a trailer house occupied by a female wearing a nylon stocking over his face, gloves, and dark clothing, and held a knife to the victim's throat.

b. been convicted of assault and robbery in Kansas in 1974 based on an incident where he entered a female's home wearing a stocking over his face, gloves on his hands, and dark clothing, and during which he also carried a weapon.

c. as part of the plea bargain related to the Kansas incident, confessed to eight rapes or attempted rapes, and eleven burglaries.

Lewis's affidavit in support of the State's application included other information which is not relevant to our conclusion.

On appeal from the District Court's order denying Johnston's motion to suppress the evidence gathered pursuant to the State's search warrant, Johnston contends that there was insufficient evidence within the four corners of Lewis's affidavit to establish probable cause for issuance of the warrant. Specifically, he contends that there was nothing within the affidavit to establish a nexus between him and the crimes which were being investigated. He also goes beyond

the four corners of the affidavit to suggest numerous facts which were inconsistent with probable cause to believe that he was Pearson's assailant. He argues that, at most, Lewis established a suspicion of his guilt, but that in *State v. Isom,* 641 P.2d at 424, we held that a mere suspicion was insufficient to establish probable cause for the issuance of a search warrant.

In response, the State points out that Lewis's affidavit described the crime which was being investigated, including its location, the manner in which the assailant was attired, and that he was carrying a weapon. The affidavit established that Johnston was familiar with the reported victim, and in fact, had asked her to date him on previous occasions. It also established that he matched the physical description of the person who reportedly assaulted Pearson, and that he had a prior history of similar acts while disguising himself in a manner nearly identical to the disguise employed in this case.

In *State v. Hook* (1992), 255 Mont. 2, 6, 839 P.2d 1274, 1277, we held that criminal history is "one of the many factors to be considered under the totality of circumstances test." Furthermore, the Pennsylvania Supreme Court, in *Commonwealth v. Gullett* (Pa. 1974), 329 A.2d 513, 518, expressed the view that:

> [W]here the past criminal conduct bears a sufficient similarity either because of the nature of the crime or the manner of its execution to the act in question, so as to give rise to a reasonable inference that the same person committed both acts, this fact can be considered along with other available information in a determination of probable cause.

We conclude, under the circumstances in this case, that the affidavit offered by the State in support of its application to seize the person of Ray Dean Johnston and search his person by collecting body hair and withdrawing bodily fluids established probable cause when the similarity of his past criminal conduct is considered in combination with the fact that he had previously attempted to establish a relationship with the reported victim and that he matched the physical description of the person who was reported to have assaulted her. For these reasons, we conclude that there was a substantial basis for the issuance of the search warrant at issue and that the District Court did not err when it denied Johnston's motion to suppress the evidence gathered as a result of that warrant.

## ISSUE 2

■ Did the District Court err when it denied Johnston's motion for a continuance of the trial?

On the date of trial, two of Johnston's witnesses did not appear, even though they had agreed to appear and had been subpoenaed. They reportedly were in Nevada on that date. The trial court, while agreeing that defense counsel had made a good faith effort to secure the presence of those witnesses, refused to continue the trial so that their testimony could be presented. Defendant contends that these witnesses would have corroborated Johnston's testimony that he had a financial relationship with Pearson which he explained as the basis for his presence in her home and her participation in consensual intercourse with him.

■ We have held that the district court does not err when it denies a motion for continuance absent a clear abuse of discretion. *State v. Walker* (1986), 225 Mont. 415, 419, 733 P.2d 352, 355 (citing *State v. Harvey* (1979), 184 Mont. 423, 431, 603 P.2d 661, 666).

Section 46-13-202(3), MCA, states:

> All motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant. This section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial.

The State argues that the District Court's exercise of its discretion when it denied Johnston's motion for a continuance is supported by the fact that the motion was made just prior to Johnston's presentation of evidence, rather than prior to trial, the fact that both witnesses were related to Johnston, and that collusion between them and Johnston was justifiably suspected, and the fact that defense counsel knew prior to trial that both witnesses were out of state, but had not had out-of-state subpoenas issued.

The reason the District Court is given broad discretion to decide motions for a continuance is because of its superior position to consider the merits of such a motion in the context of the factors set forth in § 46-13-202(3), MCA. Based on the sterile record before us, we are unable to conclude that the District Court clearly abused that discretion.

For these reasons, the judgment of the District Court is affirmed.

CHIEF JUSTICE TURNAGE, JUSTICES GRAY, NELSON and WEBER concur.