No. 83-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

            Plaintiff and Respondent,

    -vs-

GARRY HENRICKS,

            Defendant and Appellant.


APPEAL FROM:    District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Garry Henricks, pro se, Billings, Montana


        For Respondent:

            Hon. Mike Greely, Attorney General, Helena, Montana
            Robert McCarthy, County Attorney, Butte, Montana


                        Submitted on Briefs:    August 18, 1983

                                    Decided:    November 10, 1983


Filed:    NOV 1 0 1983

_____
                Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Petitioner Garry Henricks appeals an order of the District Court of the Second Judicial District of the State of Montana, County of Silver Bow, dismissing plaintiff's petition for post-conviction relief. We affirm.

During the late evening hours of September 12, 1981, Richard Graham was struck and killed while crossing a street in Butte, Montana. Graham was struck by the Henricks automobile in a hit-and-run accident. Both Garry and his wife Lorraine were in the automobile at the time of the accident, and both had been drinking heavily throughout the afternoon and evening.

Following the hit-and-run, Garry and Lorraine decided to abandon the car and report it stolen because they had both been drinking heavily and did not have insurance.

The Henricks car was located by the police on September 13, 1981. On October 10, 1981, Lorraine gave a statement in which she claimed that she was the driver of the vehicle which struck and killed Graham. Upon completion of her statement, she was arrested and charged with the crime of negligent homicide. On October 16, 1981, Lorraine gave a second statement in which she recanted her previous confession and in which she claimed that her husband Garry was actually driving at the time of the accident. The allegations contained in Lorraine's second statement were investigated and on November 5, 1981, she was released from jail. On the same day, November 5, 1981, Garry was arrested and charged with the crime of negligent homicide.

Henricks made an initial appearance in justice court on November 5, 1981, at which time he was advised of his rights,

2

including his right to be represented by counsel. Henricks's initial appearance continued on November 6, 1981, during which time Brad Belke, public defender for Butte-Silver Bow County, sat in on the proceedings. A preliminary examination was scheduled for November 10, 1981, but instead the District Court granted the State leave to file an information pursuant to section 46-11-201, MCA.

Henricks was arraigned in District Court on November 23, 1981, at which time he was represented by his retained counsel, Gregory R. Todd. A plea of not guilty was then entered and trial was set for January 18, 1982. Henricks was represented by counsel at all stages in the proceedings except his initial appearance.

On January 4, 1982, Henricks signed and filed a consent to substitution of counsel, replacing Gregory R. Todd with attorney John G. Winston. Winston had been serving as county attorney for Silver Bow County on a part-time basis until his termination on November 13, 1981. At the time of the hit-and-run, Winston was assigned only juvenile and police court cases for the county attorney's office.

On January 4, 1982, Winston filed a motion to continue and waiver of right to a speedy trial. Henricks signed the motion, which included the following paragraphs:

"IV.

"That defendant has been notified by his attorney, that John G. Winston was the County Attorney for Butte-Silver Bow for six (6) years and was working on a part time basis handling Juvenile and Police Court cases, for the County Attorney's office when this accident occurred.

"V.

> "That the defendant does not view the
> facts stated in Paragraph IV (above), as
> being detrimental to his case because he
> has been informed that John G. Winston
> was not being assigned to felony cases
> and was doing only Juvenile and Misde-
> meanor cases as stated above."

Based upon the above facts, Henricks presents essen-
tially three issues for review:

1.  Did Henricks receive effective assistance of
counsel?

2.  Was it a conflict of interest for attorney Winston
to represent Henricks and for attorney Belke to sit in during
Henricks's initial appearance?

3.  Was Henricks prejudiced by inaccuracies in the
presentence investigation report?

Before beginning our discussion of the issues present-
ed, we note that Henricks is appearing pro se in this appeal
of the denial of his petition for post-conviction relief.
Since Henricks has elected to act in this capacity, we find
that he will be held to the same standards as any appellate
attorney in a matter such as this.

Secondly, as we noted recently in Fitzpatrick v. State
(Mont. 1983), _____ P.2d _____, 40 St.Rep. 1598, we observe
that all of the issues presented here could have been brought
at the time of Henricks's original appeal of his conviction.
While we may consider these issues at this time, we will also
take into consideration the fact that these issues, if valid,
could and should have been raised at the time of appeal of
the conviction.  It is clearly an abuse of the post-convic-
tion relief statute to raise or manufacture issues long after
the proper time for presentation of such issues.  With the

4

above two factors in mind, we now proceed to the discussion of the issues presented.

I.

Did Henricks receive effective assistance of counsel?

Henricks presents us with a list of twenty-eight charges which he alleges are evidence of "per se" ineffective assistance of counsel. Most of these charges are frivolous and vague and are not supported by evidence in the record.

Of the twenty-eight charges listed, the following might be of merit if supported by the record:

(1) failure by Winston to invoke the spousal privilege set forth in section 46-16-212, MCA;

(2) failure by Winston to interview a witness and call certain other witnesses;

(3) failure by Winston in not being present during the presentence investigation report interview; and,

(4) failure by Winston to object to alleged prosecutorial misconduct.

As to the charge of failure by Winston to invoke the spousal privilege, Henricks has clearly waived his right to question that trial tactic at this time. When Lorraine Henricks was called to testify, the court interrupted the direct examination and asked:

> "The Court: For the record now I would like Mr. Henricks to advise the Court whether he is consenting to Mrs. Henricks testifying.
>
> "Mr. Henricks: Yes, I do."

We also note that Henricks signed an affidavit stating that the spousal privilege had been explained to him. While this affidavit alone perhaps would not suffice, we find that

5

the affidavit in conjunction with Henricks's response in court clearly constitutes waiver. Consequently, Henricks cannot now claim failure to invoke the spousal privilege as evidence of ineffective assistance of counsel.

Even if the affidavit and testimony did not constitute waiver, Henricks has failed to show prejudice. Four other witnesses gave testimony from which the jury could infer Henricks was driving at the time of the hit-and-run. State v. Henricks (Mont. 1982), 653 P.2d 479, 481, 39 St.Rep. 2022, 2024.

(2) The second issue to be discussed is the failure by Winston to interview a witness and call certain other witnesses. Henricks claims that Winston's failure to interview Dr. Mark Borke, an emergency room physician who examined Henricks and his wife following the accident, constituted ineffective assistance of counsel. As in the other allegations, Henricks again fails to allege how this prejudiced him. It is also abundantly clear from the transcript that Dr. Borke's lack of experience, training and knowledge was clearly brought out by defense attorney Winston on cross-examination.

Henricks also states that certain named witnesses should have been called. However, he fails to state the significance of these witnesses, i.e., what they would have said, how their testimony would have assisted in his defense, and how he was prejudiced by Winston's failure to call them. There is also no evidence to show Henricks wanted these witnesses called during trial and that he informed Winston of of this.

(3) The third allegation to be discussed is the failure by Winston in not being present during the presentence

investigation report interview. Again, Henricks cites no authority for alleging this to be an act of ineffective assistance of counsel and again fails to show how he was prejudiced by Winston's absence. The State cites Baumann v. United States (9th Cir. 1982), 692 F.2d 565, as follows: "We hold that a routine presentence interview of an individual convicted of a noncapital federal offense is not, . . . a critical stage of the proceeding in which counsel's presence, or advice, is necessary to protect the defendant's right to a fair trial." Baumann, 692 F.2d at 578. We find no compelling reason to hold otherwise under these circumstances.

(4) The fourth allegation to be discussed is the failure by Winston to object to alleged prosecutorial misconduct. This omission which Henricks alleges constitutes ineffective assistance of counsel relates to Winston's failure to object to the prosecutor giving a defense witness his Miranda warnings while the witness was on the stand preparing to testify. Initially, Henricks cites no authority to support this allegation of failure to object as evidence of ineffective assistance. Nor does he cite any authority in his original brief stating that such an act is prosecutorial misconduct. In his reply brief, Henricks again attempts to address this issue but cites cases which are not on point.

We note that Henricks, in making the diverse allegations, has failed to show how these allegations, even if true, resulted in prejudice to him and stemmed from neglect or ignorance rather than from informed, professional deliberation. We stated this requirement in State v. Morigeau (Mont. 1982), 656 P.2d 185, 189, 39 St.Rep. 2311, 2317, and find that Henricks has failed to meet this burden. As we stated in State v. LaValley (Mont. 1983), 661 P.2d 869, 872,

7

40 St.Rep. 527, 530, "[h]istorically, in Montana and elsewhere, the burden has been heavy on one who seeks to reverse a judgment on the grounds of incompetency of counsel." In LaValley, the issue of ineffective assistance of counsel was properly raised on direct appeal of the conviction of deliberate homicide and aggravated kidnapping. If the burden is heavy when the issue is raised on direct appeal, it follows that the burden on petitioner must be even heavier when the issue is raised, apparently as an afterthought, only after petitioner's conviction has been upheld on appeal. As we stated in Fitzpatrick, it is not the purpose of the post-conviction relief statute to provide successive opportunities for access to the appellate court simply because petitioner is not pleased with his conviction or has failed on direct appeal. The post-conviction relief statute requires petitioner to meet a two-part test, which test Henricks has failed to meet. Fitzpatrick, 40 St.Rep. at 1600.

In State v. Rose (Mont. 1980), 608 P.2d 1074, 37 St.Rep. 642, this Court adopted the "reasonably effective assistance test" as stated by the Ninth Circuit Court of Appeals in Cooper v. Fitzharris (9th Cir. 1978), 586 F.2d 1325: "Persons accused of crime are entitled to the effective assistance of counsel acting within the range of competence demanded of attorneys in criminal cases." State v. Rose, 608 P.2d at 1081. As we stated in LaValley, "In evaluating defense counsel's representation, it is not our function to second-guess trial tactics and the strategy." LaValley, 661 P.2d at 872. We also noted that "reasonably effective counsel does not mean that the defendant is constitutionally guaranteed such assistance of counsel as will necessarily result in his acquittal." LaValley, supra.

8

"Success is not the test of efficient counsel, frequently neither vigor, zeal, nor skill can overcome the truth." State v. Rose, 608 P.2d at 1082, quoting State v. Forsness (1972), 159 Mont. 105, 110, 495 P.2d 176, 178-179.

## II.

The second major issue raised by Henricks is whether it was a conflict of interest for Winston to represent Henricks and for attorney Belke to sit in during Henricks's intitial appearance.

We note that Winston was hired by Henricks and not appointed by the court. We also note that the motion to continue, quoted above, and signed by Henricks, clearly informed Henricks of Winston's prior association with the county attorney's office. Despite this fact, Henricks retained Winston as his defense counsel. Under these specific circumstances, Henricks, by his acts, waived his right to assert any conflict of interest charge against Winston based on Winston's prior employment.

Henricks also asserts that it was a conflict of interest for Belke to sit in on Henricks's initial hearing. At the time of the hearing, Belke was a public defender representing Henricks's wife Lorraine. Belke sat in on the hearing at the request of the justice of the peace. We have stated the rule on representation at initial hearings as follows:

> "The United States Constitution requires the appointment of counsel for indigent defendants at all critical stages of the prosecution. . . The initial appearance is not a 'critical stage' of the prosecution in Montana. There was no potential for substantial prejudice to the defendant's rights. The defendant was merely made aware of the charges against him and

> informed of his constitutional rights.
> We therefore hold that the defendant's
> right to effective assistance of counsel
> was not violated." State v. Dieziger
> (Mont. 1982), 650 P.2d 800, 802, 39
> St.Rep. 1734, 1736.

The State argues that since Henricks was not constitutionally entitled to an attorney at his initial hearing, he cannot now claim prejudice because his wife's attorney sat in on the proceedings. We find the State's argument persuasive and hold accordingly.

III.

The third major issue raised by Henricks alleges prejudice due to inaccuracies in the presentence investigation report.

It was pointed out to the court at the sentencing hearing that there was an error regarding a DUI charge listed on November 4, 1980. The court recognized that the date was incorrect.

Henricks also claims that charges entered clearly on the report as having been dismissed should not have been included. This contention is contrary to law in this state and therefore without merit. State v. Baldwin (Mont. 1981), 629 P.2d 222, 224, 38 St.Rep. 882, 884.

Henricks also states that a juvenile charge should not have been included in the presentence report. We have held it permissible to allow juvenile records as part of the presentence investigation report at a sentencing hearing. State v. Radi (Mont. 1979), 604 P.2d 318, 321, 36 St.Rep. 2345, 2348.

In conclusion, we find Henricks's allegations not only untimely but also without merit. Consequently, we affirm the

10

order of the District Court dismissing Henricks's petition for post-conviction relief.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

11