No. 83-185

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

RANDALL CLIFFORD BOYER,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Lake,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Brian J. Smith, Polson, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        John Frederick, County Attorney, Polson, Montana

---

Submitted on Briefs: December 29, 1983

Decided: February 28, 1984

Filed: FEB 2 1984

*Ethel M. Harrison*

---
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises out of the conviction of appellant on two counts of sexual intercourse without consent and one count of aggravated kidnapping. A jury returned a guilty verdict on all counts in the Fourth Judicial District Court, Lake County.

On April 25, 1980, the prosecutrix and three friends, Linda Jellisen, Marge and Marianne Ciolkosz began an evening of drinking and partying. After stopping at a "kegger" they went to a party at a trailer in East Missoula, Montana. Appellant also attended this party and met the prosecutrix during the evening. Appellant left the party with some friends and later joined another group of friends. He returned with them to the party in East Missoula. Appellant brought the prosecutrix back to his friend's car and took her back to Missoula.

They then stopped at Pam Golden's house where Pam and Judy Steel stayed for the night. There, appellant fondled the prosecutrix on the lawn outside that house. Testimony indicates the prosecutrix screamed or loudly objected at that point, thereby causing Pam Golden to tell them to be quiet.

Jim Brubaker then drove the appellant and the prosecutrix from Missoula to Arlee. Brubaker dropped them off at a residence outside of Arlee. Appellant took the prosecutrix into the house. As he was talking to Thomas McDonald, a resident of the house, the prosecutrix tried to run away from there. The appellant caught up with the prosecutrix and took her into a shed located on the property

and engaged in sexual intercourse twice. Prosecutrix claims it was without consent.

Brubaker, during this time, went to pick up another friend, Theodore Raymond. They returned to the McDonald residence and picked up the prosecutrix and the appellant. They drove back to Missoula early on April 26. During this return trip, the prosecutrix, upon request, gave the appellant her address and phone number. Brubaker then dropped the appellant off at his residence in Missoula and later took the prosecutrix to the Ciolkosz residence. The prosecutrix went to the police and obtained a rape examination at St. Patrick Hospital. She also received treatment for injuries she suffered.

A Lake County Sheriff's Deputy arrested the appellant later that day for parole violations. The State, a few days later, charged him with sexual intercourse without consent and aggravated kidnapping. Following some delays, trial was held on November 17, 1980. The appellant appealed his conviction. His attorney failed to perfect the appeal and later was disbarred on unrelated matters. The court then reassigned the case to new counsel.

Two issues are raised on appeal:

(1) Was the appellant denied his right to a speedy trial?

(2) Did the appellant receive effective assistance of counsel?

Appellant asserts he was denied his right to a speedy trial. He claims a 205-day delay violated his constitutional right to a speedy trial. The United States Supreme Court articulated the test for determining if the

delay denied the defendant a right to a speedy trial in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. This Court in State v. Fife (Mont. 1981), 632 P.2d 712, 38 St.Rep. 1334, cites many other Montana cases that use that test. The test examines four factors: ( 1 ) Length of delay; (2) reason for delay; (3) defendant's assertion of the right; and (4) prejudice to the appellant.

The first factor triggers the inquiry into the speedy trial issue. The longer the delay, the more likely the burden shifts to the State in the "explaining of the delay and showing absence of prejudice." State v. Kelly (Mont. 1983), 661 P.2d 26, 27, 40 St.Rep. 364, 365. In State v. Freeman (1979), 183 Mont. 334, 599 P.2d 368, this Court found 207 days triggered inquiry into the issue. "Once the burden has shifted to the State to explain the reason for the delay, the question becomes, to whom is the delay to be attributed?" Freeman, 183 Mont. at 338, 599 P.2d at 371.

In the instant case, the appellant caused a good part of the delay. The State initially incarcerated the appellant for parole violations. Then, a few days later, the State brought charges for the above-named offenses and appointed an attorney on April 18, 1980. On May 12, 1980, appellant moved for and received a substitution of counsel and requested a delay of the preliminary hearing. The court then set May 19, 1980 for a preliminary hearing. The court rescheduled that hearing to May 29, 1980, due to the declared emergency caused by volcanic ash that fell as a result of the Mount. St. Helens' eruption. The State filed an information on the sexual intercourse without consent charge on June 4 and requested a continuance for the

arraignment until June 12. On July 25, appellant moved to depose some of the State's witnesses. The court requested these depositions be taken as soon as possible and allowed the State ten days following the completion to file criminal pretrial procedures. It ordered on August 13 that the deposers hold themselves available for examination. On September 17, the court postponed for one week a hearing to transfer the aggravated assault case to Lake County from Missoula County, because of appellant's counsel's absence. The court told the appellant that it would schedule trial in October if he thought there might be a speedy trial problem. Appellant declined to object at that time. The court scheduled the trial for November 17, 1980. On October 29, appellant filed a motion to dismiss for denial of speedy trial.

This record clearly shows that the appellant caused part of the delay for the trial. The substitution of counsel caused a three-week delay by admission of the defendant. Another week delay occurred in September when appellant's counsel failed to appear at a hearing. The appellant's counsel further delayed the case by requesting depositions and then never deposed one witness. The State waited for the conclusion of depositions. Although this Court will not speculate on the amount of delay this caused, it certainly makes appellant accountable for much of the delay.

Appellant contends the State Crime Lab completed its examinations only a day before the trial occurred. This demonstrates the State delayed prosecution until they obtained the results. The record fails to show a request by

the State for more time to conduct lab results. While the State may have delayed testing the evidence, it did not delay the case for the purpose of testing the evidence. Appellant's argument fails to show the State delayed prosecution.

Appellant asserts his incarceration demonstrates the prejudice resulting from the delay. While incarceration can demonstrate prejudice, that in itself does not necessarily prove prejudice. In State v. Shurtliff (Mont. 1980), 609 P.2d 303, 37 St.Rep. 713, this Court said that although defendant was incarcerated for approximately eleven months, the long period before trial was actually to his benefit, due to the added time to prepare a defense. This Court in Shurtliff, supra, found no speedy trial violation primarily because much of the delay was attributed to the appellant.

Appellant asserts the delay caused the loss of a possible witness, Dr. Bowers, the physician who examined the prosecutrix, who refused to return to Montana for the trial. Appellant failed to show how the lack of her testimony caused prejudice to him. The nurse who assisted Dr. Bowers, testified about the rape examination and the condition of the prosecutrix. The State attempted to bring Dr. Bowers to the trial; however, she refused. The State decided against compulsory process and the appellant failed to require her attendance either. We fail to see how her lack of presence prejudiced the appellant's case. We therefore hold the appellant was not denied a speedy trial.

The appellant next contends he received ineffective assistance of counsel denying him of his constitutional right to counsel under Amendment XI, United States

-6-

Constitution, and Article II, section 24, 1972 Montana Constitution. He claims his counsel failed to conduct the necessary discovery, failed to properly prepare for trial, failed to explore plea bargaining possibilities, and failed to call witnesses in appellant's case-in-chief. Appellant admits deficiencies in the record to support his position, but he requests this Court to find either ineffective assistance of counsel or remand the case for a special evidentiary hearing.

This Court reiterated in State v. Hendricks (Mont. 1983), 672 P.2d 20, 40 St.Rep. 1786, the test adopted in State v. Rose (Mont. 1980), 608 P.2d 1074, 37 St.Rep. 642: "Persons accused of crime are entitled to the effective assistance of counsel acting within the range competence demanded of attorneys in criminal cases." This Court futher stated in Hendricks, supra:

> "'In evaluating defense counsel's representation, it is not our function to second-guess trial tactics and the strategy.' LaValley, 661 P.2d at 872. We also noted that 'reasonably effective counsel does not mean that the defendant is constitutionally guaranteed such assistance of counsel as will necessarily result in his acquittal.' LaValley, supra. 'Success is not the test of efficient counsel, frequently neither vigor, zeal, nor skill can overcome the truth.'" (Citations omitted.) 672 P.2d at 25, 40 St.Rep. at 1791.

The record may indicate ineffective assistance of counsel. The following is just one indication of counsel's handling of the case:

> "I further relate to the Court, and I believe counsel would not deny that he was provided with investigatory reports by Officer Crego, a transcribed statement of the victim . . . a transcribed statement of a witness Linda Jellisen; and that in these reports the specific

items of evidence which counsel now
indicates he has not examined, were each
and all listed as to their seizure and
where they were."

The record further shows counsel filed a notice of appeal, yet counsel failed to perfect the appeal. In the meantime this Court disbarred counsel.

The record indicates counsel gave a minimum of attention to the case, yet fails to show conclusively that the allegations are true. The record also shows defendant made a motion for a new trial and then filed a motion to appeal shortly thereafter. The court never ruled on the motion for new trial. We find insufficient evidence from which to make a determination on this issue. We therefore remand this to District Court for an evidentiary hearing and a ruling on the motion for a new trial regarding the issue of ineffective assistance of counsel.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

-8-