No. 92-211

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

LYNN TACKETT STARKS,

Petitioner and Appellant,

and

MICHAEL JOSEPH STARKS,

Respondent and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chris P. Christensen, Attorney at Law,
Kalispell, Montana

For Respondent:

Darrell Worm, Ogle & Worm,
Kalispell, Montana

FILED

JUN 23 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: January 14, 1993

Decided: June 23, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Petitioner Lynn Tackett Starks appeals from an order of the District Court for the Eleventh Judicial District, Flathead County, issued on February 12, 1992, which modified the original dissolution decree and awarded sole custody of the parties' minor child to Michael Joseph Starks. We affirm.

The following issues are raised on appeal:

1. Did the District Court err when it found that the statutory requirements for modification of a prior custody decree had been satisfied?

2. Did the District Court improperly exclude evidence of respondent's past conduct?

3. Did the District Court err when it awarded sole custody to respondent and did not assign custody to Lynn and Michael jointly?

4. Was respondent's affidavit in support of a motion to temporarily modify custody sufficient to warrant a hearing?

Lynn and Michael were married on August 14, 1981. They had one daughter, Chelsea Nichole, who was two years old at the time of their dissolution on August 16, 1984. The dissolution decree incorporated the parties' custody agreement which designated that Chelsea would be placed in the sole care, custody, and control of Lynn, subject to Michael's rights of liberal and reasonable visitation.

In 1985, Lynn and Chelsea moved to Albuquerque, New Mexico, and Lynn subsequently lived with Robin Blagg. Lynn and Robin Blagg then separated in 1986, two months after the birth of their son, Levi Reston Blagg. Thereafter, when Blagg would exercise visitation with his son, he would frequently take both Levi and Chelsea out for various activities.

In 1989, it was discovered that Chelsea, who was then seven years old, had been sexually molested by Blagg. Lynn immediately contacted rape counselors and notified the police department, which investigated the incident. As a result, the New Mexico District Attorney's office initiated efforts to prosecute Blagg. Lynn testified that Chelsea experienced mental and emotional difficulties after the incident with Blagg, but that she believed Chelsea's condition was aggravated due to the ongoing investigation by the district attorney's office and the appearance before the Grand Jury.

When the district attorney's office requested a second video deposition of Chelsea in 1991, nearly two years after the molestation incident, Lynn objected to Chelsea's further participation in the legal proceedings against Blagg. Lynn sent Chelsea to Montana for summer visitation with Michael, claiming that she believed there was sufficient information to convict Blagg without Chelsea's testimony. Although Lynn was aware that the district attorney wanted Chelsea to testify, she maintains that she was not informed of a hearing scheduled for June 24, 1991, until

3

after Chelsea had already left for Montana. Lynn insists that she acted to protect Chelsea, but the New Mexico authorities, based on their observations and evidence, assert that Lynn was attempting to protect Blagg from the sexual molestation charges.

When Chelsea's location was discovered, the New Mexico District Attorney's office served subpoenas on Michael and Chelsea to require Chelsea's attendance at the proceedings against Blagg. Lynn contacted Michael and told him not to bring Chelsea to New Mexico because her testimony was not necessary to prosecute Blagg, and that she did not want Chelsea to have "to come forward anymore." In a later communication, Lynn threatened to sue Michael for custodial interference if he brought their daughter to the trial. Despite these threats, Michael and Chelsea attended the New Mexico proceedings. Blagg subsequently pled guilty to criminal sexual contact with a minor and received an 18 month suspended sentence, conditioned on his completion of a sex offender treatment program.

In June 1991, because of these events and the fact that Lynn was no longer willing to cooperate with the New Mexico authorities, Michael petitioned the District Court in Flathead County and obtained temporary custody of Chelsea, pending further order of the court. Hearings were then conducted on August 7, 1991, and on February 3, 1992.

In its findings of fact and conclusions of law, the court found that Lynn has an ongoing relationship with Blagg to the

4

extent that Blagg exercises his court-ordered visitation rights with Levi and that this threatens Chelsea's future welfare. Furthermore, based on Lynn's refusal to cooperate with Blagg's prosecution and her attempts to dissuade Michael from assisting the New Mexico authorities, the court inferred that Lynn may have been shielding Blagg from prosecution. After concluding that Chelsea had suffered physical and emotional harm while in Lynn's custody and was in danger of suffering further serious harm if she was to remain with Lynn, the court awarded Michael sole custody of Chelsea, with reasonable visitation rights to Lynn. From this order, Lynn appeals.

I

Did the District Court err when it found that the statutory requirements for modification of a prior custody decree had been satisfied?

Section 40-4-219, MCA, provides in pertinent part:

(1) The court may in its discretion modify a prior custody decree if it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:

. . . .

(c) the child's present environment endangers seriously his physical, mental, moral, or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him.

5

In *In re Marriage of Sarsfield* (1983), 206 Mont. 397, 404, 671 P.2d 595, 599, this Court made clear that a finding of a change in circumstances, such that the child's welfare is endangered seriously by the present custody arrangement, is a jurisdictional prerequisite to determining whether an original custody decree should be modified. *See also, Gianotti v. McCracken* (1977), 174 Mont. 209, 214, 569 P.2d 929, 932.

In this instance, Lynn contends that the court erred in modifying the decree because there was no evidence of any present danger to Chelsea while in Lynn's custody. She asserts that the molestation was a past, one-time occurrence, and Chelsea's only contact with Blagg at this time is that she witnesses him picking up Levi from the street curb outside Lynn's residence. Lynn disputes the court's finding that her relationship with Blagg is "ongoing," particularly in light of the fact that Blagg only infrequently exercises his visitation with Levi, and she maintains that the court's inference that she was shielding Blagg from prosecution was not supported by any credible evidence. Therefore, because there was no evidence of a change of circumstances presently endangering Chelsea, she contends that the statutory prerequisites for modification of custody were not satisfied.

When reviewing findings in regard to the grounds for modifying custody, this Court will not reverse those findings unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.; *In re Marriage of McClain*

6

(Mont. 1993), 849 P.2d 194, 50 St. Rep. 314. After findings have been made, it is within the court's discretion whether to modify custody, based on its findings and its application of the law. We will not reverse that decision unless there has been a clear abuse of discretion. *In re Marriage of Merriman* (1991), 247 Mont. 491, 807 P.2d 1351.

In custody modification cases, it is particularly important for this Court to defer to the district court which personally evaluated the testimony and was in the best position to determine the credibility and character of the witnesses. *In re Marriage of Ulland* (1991), 251 Mont. 160, 168, 823 P.2d 864, 869. When the testimony presented by the parties conflicts, it is the trier of fact's function to resolve those conflicts, and this Court will not substitute its judgment for that of the district court. *Ulland*, 823 P.2d at 870; *In re Marriage of Mitchell* (1991), 248 Mont. 105, 108, 809 P.2d 582, 584.

In this instance, we hold that the court's findings of a change in circumstances necessitating a custody modification in order to protect Chelsea's well-being were supported by substantial credible evidence and were not clearly erroneous.

Even though there was conflicting testimony, the court could reasonably find that there was an ongoing relationship between Lynn and Blagg at least to the extent of Blagg's court-ordered rights to visit Levi, who is in Lynn's custody. What particularly concerned

7

the court was the fact that Blagg was not incarcerated after he was convicted of molesting Chelsea, so the potential existed for recurring contact between Blagg and Chelsea if she returned to New Mexico. Although Lynn asserts that this does not constitute evidence of present danger, we made clear in *Sarsfield*, 671 P.2d at 602, that a potential danger of future harm to a child is sufficient to give the trial court jurisdiction under § 40-4-219(1)(c), MCA, to consider whether to modify a custody decree. Furthermore, although the testimony in regard to Lynn's motives for her actions was conflicting, the District Court was in the best position to evaluate credibility, and we will not substitute our judgment in this situation.

Lynn next asserts that, even if the statutory prerequisites of a change of circumstances and present danger were satisfied, the court failed to adequately consider the harmful effects of a change of custody. Lynn points out that, before it can order a change in custody, § 40-4-219(1)(c), MCA, requires the court to determine that the advantages of a change in custody will outweigh the disadvantages. She contends that the District Court completely ignored the adverse effects of breaking up the five-year relationship that Lynn, Chelsea, and Levi have established, and the consequences of removing Chelsea from the environment she has lived in since she was three years old.

8

However, the record clearly demonstrates that the court evaluated Chelsea's adjustment to her new environment, as well as her environment in New Mexico, when it decided whether the home situation offered by Michael would serve her best interests. Moreover, the court's purpose in changing custody was to protect Chelsea from contact with her molester, and it is evident that the court decided that this advantage outweighed any harm from the change itself.

We recognize that disrupting the familial relationship that Chelsea has been raised in will inevitably have its negative impacts. Such problems are virtually unavoidable in a custody dispute. However, in light of the tragic incident of sexual abuse that this child was subjected to, we do not find it unreasonable that the court acted to remove Chelsea from a situation that would bring her into contact with her molester. Having found that substantial evidence existed to support the District Court's findings, we conclude that the court did not clearly abuse its discretion when it transferred custody of Chelsea from Lynn to Michael.

II

Did the District Court err when it excluded evidence of respondent's past conduct?

The court sustained Michael's objection to questions concerning his and Lynn's conduct before their dissolution on the basis that the evidence was too remote in time to be probative of

9

Michael's fitness to serve as Chelsea's custodian. Lynn contends that the language of § 40-4-219(1), MCA, requires the court to consider facts which were unknown to the trial court at the time the decree was entered, and that, based on our holding in *Sarsfield*, 671 P.2d at 604, it was reversible error for the court to limit the evidence in this regard.

In *Sarsfield*, the trial court ruled that evidence concerning the parent seeking modification, which took place prior to the entry of the decree, was inadmissible on a theory of *res judicata* when there had been no issue of fitness during consideration of the first decree. We rejected this argument, noting that § 40-4-219(1), MCA, specifically contemplates that the court should consider pre-decree facts unknown to the trial court at the time the decree was entered. We held that it was reversible error to summarily reject evidence bearing on custodial fitness in that case.

This case is distinguishable from *Sarsfield* because Michael did not object on the grounds that the trial court was precluded from considering this evidence. His objection, and contention before this Court, is that the events in question were too remote in time to be probative of the issue of custody and were not relevant with respect to Chelsea.

The determination of the admissibility of evidence is within the discretion of the trial court, and we will not disturb the court's ruling absent a manifest abuse of this discretion. *Jacobsen*

10

*v. State* (1989), 236 Mont. 91, 94, 769 P.2d 694, 695. In determining whether evidence is too remote in time to be relevant, a trial court is not guided by any fixed rules, but must consider the nature of the evidence and the circumstances of the particular case. *Preston v. McDonnell* (1983), 203 Mont. 64, 67, 659 P.2d 276, 277.

Here, the modification action was seven years after the initial decree and the conduct alluded to occurred prior to the dissolution. In contrast, the evidence in *Sarsfield* was offered in a modification action less than one year after the original custody order was entered. In this instance, considering the circumstances of this case and the nature of the evidence in question, we do not find that the court abused its discretion when it ruled that the evidence was too remote to have significant probative value in regard to the question of custodial fitness.

## III

Did the District Court err when it awarded sole custody to respondent and did not assign custody to Lynn and Michael jointly?

Lynn contends that under § 40-4-222, MCA, the court is to presume that joint custody is in the child's best interest, and if the court finds otherwise, it must state its reasons for not awarding joint custody. Section 40-4-224, MCA. Therefore, Lynn asserts that the court erred when it did not award joint custody, or, alternatively, that the order should be set aside because the court failed to state its reasons for not doing so.

11

While it is true that Montana law creates a presumption in favor of joint custody, this presumption only arises if a party requests it. Section 40-4-224, MCA, provides that "[u]pon application of either parent or both parents for joint custody, the court shall presume joint custody is in the best interest of a minor child . . . ." (Emphasis added.)

There is no evidence in the record that either Lynn or Michael ever requested joint custody. Therefore, the District Court's decision to award sole custody to Michael without articulating why joint custody would not be in Chelsea's best interest is not in conflict with Montana law. Accordingly, the court did not err in this regard.

IV

Was respondent's affidavit in support of a motion to temporarily modify custody sufficient to warrant a hearing?

Finally, Lynn challenges the sufficiency of the affidavit submitted by Michael when he moved to temporarily modify custody. It is her contention that the affidavit was inadequate to establish cause for a hearing because § 40-4-220(1), MCA, requires that an affiant set forth facts, and Michael's averments, with one exception, were purely speculative.

This is the first time Lynn has raised this objection and it is the settled rule in Montana that we will not review an issue raised for the first time on appeal. *Hares v. Nelson* (1981), 195 Mont.

12

463, 466-67, 637 P.2d 19, 21. Therefore, we decline to address this issue.

For the reasons stated, the District Court's order is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

13

June 23, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Chris Christensen
Attorney at Law
1103 So. Main
Kalispell, MT 59903-1954

Darrell S. Worm
Ogle & Worm
P.O. Box 899
Kalispell, MT 59903-0899

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy