No. 95-160

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


WARREN DEAN BROWN,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Respondent.

FILED

JUL 26 1996

Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Kevin E. Vainio, Attorney at Law,
            Butte, Montana


      For Respondent:

            Hon. Joseph P. Mazurek, Attorney General
            Elizabeth Griffing, Ass't Attorney General
            Helena, Montana

            Carolyn A. Clemens, Deputy County Attorney,
            Helena, Montana


Submitted on Briefs:  March 7, 1996

Decided:  July 26, 1996

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Warren Dean Brown (Brown) appeals from the order and judgment entered by the First Judicial District Court, Lewis and Clark County, denying his petition for postconviction relief. We affirm.

We address the following dispositive issues:

1. Did the District Court err in concluding that Brown was not denied effective assistance of counsel at trial?

2. Did the District Court err in concluding that Brown was not denied effective assistance of counsel on appeal?

3. Did the District Court err in concluding that the claimed violations of Brown's privilege against self-incrimination and his right to be free from unreasonable searches were not properly before it?

In 1988, the State of Montana (State) charged that Brown had committed the offense of felony assault by purposely or knowingly causing bodily injury to Kathie Brown (Kathie) by striking her in the head with a handgun. The charge arose out of a domestic dispute between Brown and his wife Kathie, who had been separated for approximately one month at the time. According to Kathie's testimony, she and Brown got into an argument and Brown slapped her in the face and hit her in the nose with his fist, causing her nose to bleed. Brown held his pocket knife to her neck while forcing her to clean the blood from the floor and then elongated a wire coat hanger, wrapped it around her wrist and led her around by it. Subsequently, Brown removed a .22 caliber pistol from a cardboard file in the bedroom, loaded it and pointed it at her; thereafter, he struck her several times with the gun, at least once on the

2

forehead and then on the top of her head. Kathie escaped with one of the couple's children and Brown took the other child back into his apartment. Officers arrested Brown in his bedroom some hours later and, when asked where the gun was, he directed them to the .22 pistol located in the file cabinet.

Brown also testified at trial. He acknowledged having an argument with Kathie, but denied slapping her, putting a knife to her throat, leading her around the apartment with a coat hanger and pistol-whipping her. He admitted that she got a bloody nose, but offered a much more innocent explanation than Kathie's about how it occurred. He testified that he willingly gave the police the pistol, which he was in the process of refurbishing and which lacked part of the firing mechanism.

Brown was convicted and sentenced to ten years in prison, with five years suspended, for the felony assault and another ten years in prison, with five years suspended, for use of a weapon in the assault. We affirmed the conviction on appeal, concluding that substantial evidence established the essential elements of felony assault. See State v. Brown (1989), 239 Mont. 453, 457, 781 P.2d 281, 284.

Brown petitioned the District Court for postconviction relief in 1993. Among other things, he contended that his conviction was based on evidence which violated his Fifth Amendment privilege against self-incrimination and on other evidence obtained via searches which violated his Fourth Amendment rights, and that he

was denied effective assistance of counsel both at trial and on appeal. The District Court denied the petition and Brown appealed.

1. Did the District Court err in concluding that Brown was not denied effective assistance of counsel at trial?

Brown's petition for postconviction relief and supporting affidavit alleged that deficiencies in the performance of his trial counsel, Edmund F. Sheehy, Jr. (Sheehy), resulted in Brown being denied effective assistance of counsel at trial. In responding to Brown's petition, the State submitted Sheehy's sworn affidavit addressing Brown's allegations.

The District Court held a hearing on Brown's petition. Brown testified but did not call Sheehy as a witness in order to examine him regarding his affidavit. The court subsequently determined that Sheehy's performance was not deficient and concluded that Brown was not denied effective assistance of counsel at trial. We review a district court's denial of a petition for postconviction relief to determine whether substantial evidence supports the district court's findings and whether its conclusions of law are correct. State v. Baker (1995), 272 Mont. 273, 280, 901 P.2d 54, 58 (citing Walker v. State (1993), 261 Mont. 1, 6, 862 P.2d 1, 4).

A petitioner seeking to reverse a district court's denial of a petition for postconviction relief based on a claim of ineffective assistance of counsel bears a heavy burden. Baker, 901 P.2d at 59. We apply the two-part test originally set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, in evaluating a petitioner's claim of ineffective assistance of counsel. Baker, 901 P.2d at 59; Walker, 862 P.2d at

4

4. Under the first Strickland prong, the petitioner must establish that counsel's performance was deficient pursuant to the "reasonably effective assistance" test; if counsel acted within the range of competence demanded of attorneys in criminal cases, the performance rendered was not deficient. Baker, 901 P.2d at 59. Moreover, judicial scrutiny of counsel's actions must be highly deferential and counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. Kills On Top v. State (1995), 273 Mont. 32, 49, 901 P.2d 1368, 1379 (citing Strickland, 466 U.S. at 688-89).

To satisfy the second Strickland prong, the petitioner must establish that the deficient performance prejudiced him and deprived him of a fair trial. Baker, 901 P.2d at 59. Prejudice is evaluated by whether a reasonable probability exists that, but for counsel's deficient performance, the outcome of the trial would have been different. Baker, 901 P.2d at 59. A petitioner must establish both deficient performance and prejudice to prevail on a postconviction claim of ineffective assistance of counsel, and this Court will not second-guess trial tactics and strategy. Baker, 901 P.2d at 59.

Brown argues that Sheehy's representation of him was deficient in the following regards:

a. Sheehy did not move to suppress, or otherwise attempt to exclude from evidence, Brown's statements to the arresting officers about the location of the handgun and the handgun itself, and did not object to the late endorsement of the State's expert witnesses

5

from the Montana State Crime Laboratory (Crime Lab) who examined the handgun;

b. Sheehy did not move to suppress, or otherwise attempt to exclude from evidence, a coat hanger and pocket knife; and

c. Sheehy did not communicate with him regarding these decisions.

Brown asserts that these deficiencies in Sheehy's performance prejudiced him and deprived him of a fair trial. We address Brown's contentions in turn.

a. The statements, handgun and expert testimony

It is undisputed that, at the time of Brown's arrest, he was questioned regarding the whereabouts of the handgun prior to being informed of his rights under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Brown told the officers that the weapon was in his file cabinet and the officers located it there.

Sheehy did not move to suppress either Brown's statements regarding the location of the handgun or the handgun itself. Both were admitted into evidence at trial without objection by Sheehy.

The State submitted the handgun to the Crime Lab for examination by a firearms expert, William Newhouse (Newhouse), and a serologist, Julie Long (Long). The State moved for the endorsement of Newhouse and Long as witnesses on July 7, 1988, four days before trial, noting Sheehy's lack of objection in its motion.

The handgun was manufactured in the late 1800s and was missing its trigger. Kathie and Brown had found it in pieces in the trash

6

and Brown had been refurbishing it. Kathie testified that Brown and a friend had fired the handgun once while "playing around" with it and that, in addition to hitting her with it, he also threatened to shoot her if she did not do as she was told by Brown. Brown testified that he had never fired the handgun, that it would be very dangerous to fire it and that he had not gone near the handgun on the evening in question. He also testified that he had not cleaned the gun properly after finding it and that that could explain the spot of blood in the center of the underside of the barrel.

Newhouse testified that the handgun was capable of firing a bullet, notwithstanding the absence of both a trigger and a cocking mechanism. He further testified that he had fired the handgun two times.

Long testified that the handgun had a small amount of blood on it and that the blood was human in origin. She further testified that there was not enough blood on the handgun for her to determine whether the blood was, in fact, Kathie's. Sheehy did not object to the admission of either expert's testimony.

Brown contends that his statements, the handgun and the expert testimony were used effectively by the prosecution in convicting him. On that basis, he argues that Sheehy's failure to file motions or make objections to exclude them was unwise, did not gain him any advantage and constitutes ineffective assistance of counsel.

7

The District Court found that Sheehy's performance before and during trial was not deficient but, rather, that Sheehy made certain strategic choices based on the evidence as he saw it. Sheehy's affidavit sets forth his tactical reasons for not attempting to exclude Brown's statements or the handgun itself at some length. His overall strategy involved attempting to discredit Kathie's testimony concerning the events in question by arguing that, had Brown actually hit Kathie on the head with the handgun and pointed it at her, as Kathie described, he would have hid it rather than placing it in the file cabinet and would not have told the officers where to find it. Sheehy also attempted to use the handgun to discredit Kathie by arguing that, if Brown had struck her on the head with the handgun as she described, there would have been much more blood on the handgun than the small amount that was not even identifiable as Kathie's. In short, Sheehy attempted to affirmatively use the handgun, and Brown's cooperation in directing the officers to it, to buttress Brown's position that the assault never occurred and to undermine Kathie's version of the events. In this regard, Brown testified at the hearing on his petition that he understood that the trial would turn, in large part, on Kathie's credibility versus his own.

Sheehy's affidavit also discusses his reasons for not objecting to the late endorsement of Newhouse and Long as expert witnesses for the State. According to Sheehy, Brown told him that the handgun would not discharge safely and, as a result, Sheehy felt it needed to be test-fired. Furthermore, it was Sheehy's

8

opinion that the spot on the handgun should be tested to determine whether it was merely rust, rather than blood, in hopes of negating Kathie's version of the events altogether. As it turned out, the spot was blood, but not identifiable as Kathie's, and Sheehy used that fact in attempting to undermine her testimony.

Again, as with Brown's statements and the handgun itself, Sheehy's lack of objection to both the late endorsement of Newhouse and Long as witnesses and their testimony at trial was part of his overall strategy of attempting to discredit Kathie and her testimony. We do not second-guess trial tactics and strategy. Baker, 901 P.2d at 59.

Finally, in this regard, Brown contends that Sheehy's tactical decisions were unwise and did not gain him any advantage. Brown cites to no authority for his position that the extent to which trial counsel's tactics and strategy ultimately are successful properly impacts on a court's evaluation of whether counsel's performance was deficient, and we are aware of none.

We conclude that substantial evidence supports the District Court's finding that Sheehy's decisions regarding Brown's statements, the handgun, and the State's expert witnesses were based on his trial strategy and, therefore, do not constitute deficient performance.

b. The coat hanger and pocket knife

At trial, the State introduced the coat hanger Kathie alleged Brown had wrapped around her wrist and used to lead her around the apartment, as well as the pocket knife Brown allegedly had held to

9

her throat, during the assault. Kathie had provided these items to the State.

Kathie and Brown were separated when the assault occurred and she did not have a key to Brown's apartment. Kathie testified that she entered Brown's apartment twice after his arrest. She entered through a window on the first occasion and recovered Brown's keys to the apartment and the hanger. She testified that, at the request of the Helena Police Department, she entered the apartment again to retrieve Brown's knife. Sheehy did not move to suppress, or otherwise object to the admission of, these items.

Brown contends it was undisputed at trial that Kathie obtained both the hanger and the knife by entering Brown's apartment without Brown's permission and that she retrieved the knife at the request of the Helena Police Department. He argues, therefore, that Sheehy's failure to move to suppress evidence resulting from searches he contends were unlawful under the Fourth Amendment constitutes ineffective assistance of counsel.

According to Sheehy, he personally investigated Kathie's claim that she had conducted the search for the knife at the request of the Helena Police Department and concluded that no such request had been made. Had he concluded otherwise, he would have considered a motion to suppress the knife. He intended to argue that Kathie's story regarding the law enforcement request to enter Brown's apartment to retrieve evidence was inherently unbelievable and thereby use it to attack her credibility as a witness. Indeed, Sheehy's strategy was to use Kathie's testimony in this regard to

10

argue that all of her testimony should be rejected due to her lack of truthfulness on this material matter. Once again, Brown asks us to second-guess Sheehy's trial strategy. We refuse to do so. See Baker, 901 P.2d at 59.

We conclude that substantial evidence supports the District Court's finding that Sheehy's decisions regarding the hanger and the knife were based on his trial strategy and, therefore, do not constitute deficient performance.

c. Lack of communication and consultation

Brown also alleges on appeal that Sheehy did not consult or communicate with him regarding the tactical and strategic decisions not to move to suppress, or otherwise object to the admission of, the evidence resulting from the alleged violations of his Fifth and Fourth Amendment rights. He asserts that Sheehy's lack of communication in these regards is undisputed and that the lack of communication constitutes ineffective assistance of counsel.

We observe at the outset that these alleged deficiencies in communication were not set forth in either Brown's original petition for postconviction relief, his amended petition or his supporting affidavit. Nor were they addressed in Brown's supporting memorandum. They arose only via passing reference during Brown's testimony at the hearing on his petition. Thus, while Brown's allegations in this regard are undisputed, that is so because they were not raised in his petition or supporting documents. Presumably for that reason, the District Court did not

11

address them in denying the petition and the State does not address them on appeal.

Section 46-21-105(1), MCA, provides that all grounds for relief under § 46-21-101, MCA, must be raised in the petitioner's original or amended petition and that grounds for relief not raised generally are waived. Brown did not raise these specific allegations of deficient performance by Sheehy in his original or amended petition and, as a result, they are waived and procedurally barred. Section 46-21-105, MCA; see Baker, 901 P.2d at 58. In addition, because this is a direct appeal from the District Court's denial of Brown's petition for postconviction relief, we decline to address these allegations of ineffective assistance of counsel not first properly raised in the trial court. Baker, 901 P.2d at 58.

Because Brown did not establish the deficient performance prong of the Strickland test, we need not address the prejudice prong. We hold, therefore, that the District Court correctly concluded that Brown was not denied effective assistance of counsel at trial.

2. Did the District Court err in concluding that Brown was not denied effective assistance of counsel on appeal?

Randi M. Hood (Hood), chief public defender for Lewis and Clark County, represented Brown on appeal. She raised the issue of whether there was sufficient evidence to support Brown's felony assault conviction. Brown, 781 P.2d at 282.

Brown's petition for postconviction relief alleged denial of effective assistance of counsel on appeal. Specifically, he alleged that Hood's performance was deficient in that she failed to

12

raise issues that he requested, including the substantive issues of Fifth and Fourth Amendment violations resulting in admission of the gun, hanger and knife and a claim of ineffective assistance of trial counsel. Brown also contended that Hood was deficient in failing to provide him with an opportunity for input regarding his appellate brief before it was filed. In responding to Brown's petition, the State submitted Hood's sworn affidavit addressing Brown's allegations regarding her representation on appeal. Brown did not call Hood as a witness at the hearing on his petition.

The District Court found that Hood had determined that the issues Brown wished to raise were either not supported by the record or not relevant. The court also found that, after discussion of the chances of success regarding the issues Brown wanted to raise, Brown agreed with Hood that only the issue regarding sufficiency of the evidence to support the felony charge should be pursued. Finally, the court found that Hood mailed Brown a copy of the appellate brief, together with an explanatory letter, before she filed the brief. Based on these findings, the District Court found that Hood's performance was not deficient and that Brown was not denied effective assistance of counsel on appeal. As discussed above, we review the court's findings to determine whether they are supported by substantial evidence; we review the court's conclusions to determine whether its interpretation of the law is correct. Baker, 901 P.2d at 58.

With regard to the substantive issues of whether Brown's Fifth and Fourth Amendment rights were violated and whether, as a result,

13

Brown's statements, the handgun and the pocket knife were excludable, Hood determined that the issues were not preserved by motion or objection at trial. Therefore, as Hood explained to Brown, they could not be raised for the first time on appeal absent the ability to meet the requirements of § 46-20-701, MCA, which could not be met in this case. Hood's interpretation of the law in this regard was correct. See State v. Weeks (1995), 270 Mont. 63, 86, 891 P.2d 477, 491 (citation omitted). We have indicated repeatedly that, where counsel properly interprets the law, counsel's performance is not deficient as a matter of law. See, e.g., Baker, 901 P.2d at 60-61; State v. Hildreth (1994), 267 Mont. 423, 432, 884 P.2d 771, 777; State v. Brady (1991), 249 Mont. 290, 297, 816 P.2d 413, 417.

Hood also considered Brown's assertion that he had been denied effective assistance of counsel at trial with regard to the allegedly excludable matters, examined the trial record and informed herself about the current law on ineffective assistance of counsel. She concluded that Sheehy decided not to move to suppress, or object to admission of, the evidence in furtherance of his overall trial strategy and that such tactical decisions would not successfully support an ineffective assistance of counsel claim. Given our affirmance of the District Court's conclusion to that effect above, it is clear that Hood's analysis of this issue was correct. Therefore, Hood's performance in this regard was not deficient. See Baker, 901 P.2d at 60-61; Hildreth, 884 P.2d at 777; Brady, 816 P.2d at 417.

14

Finally, with regard to Brown's contention that Hood did not provide him with an opportunity for input into his appellate brief, Hood appended to her affidavit a letter she sent to Brown with a draft of the appellate brief. Hood advised Brown in the letter regarding when she intended to file the brief and she stated in her affidavit that he did not contact her about the brief. Brown's argument in this regard essentially requests this Court to reweigh the evidence, determine that he is more credible than Hood, and make findings different from those made by the District Court. However, in matters such as these where the District Court is acting as the trier of fact, it is that court's function to resolve conflicts in the evidence and we will not substitute our judgment for that of the District Court. See In re Marriage of Starks (1993), 259 Mont. 138, 143, 855 P.2d 527, 530 (citations omitted).

We conclude that substantial evidence supports the District Court's finding that Hood's performance was not deficient. Because Brown did not establish the deficient performance prong of the Strickland test, we need not address the prejudice prong. We hold, therefore, that the District Court correctly concluded that Brown was not denied effective assistance of counsel on appeal.

3. Did the District Court err in concluding that the claimed violations of Brown's privilege against self-incrimination and his right to be free from unreasonable searches were not properly before it?

In addition to his claims of ineffective assistance of counsel, Brown's petition for postconviction relief asserted violations of his Fifth Amendment privilege against self-incrimination, which related to his non-Mirandized statements about

15

the location of the handgun and the handgun itself, and his Fourth Amendment right to be free from unreasonable searches, which related to the hanger and knife admitted into evidence as a result of Kathie's allegedly illegal searches. While these asserted constitutional violations were neither preserved at trial nor raised on direct appeal, Brown contended they should be determined substantively in his postconviction proceeding. The District Court concluded that, except insofar as these matters related to Brown's ineffective assistance of counsel claims, they were procedurally barred by § 46-21-105(2), MCA, and not properly before it. We will not overturn a district court's conclusion of law if the court's interpretation of the law is correct. Baker, 901 P.2d at 58 (citation omitted).

A petition for postconviction relief is a statutory proceeding in which certain alleged errors may be raised by a "person adjudged guilty of an offense in a court of record who has no adequate remedy of appeal. . . ." Section 46-21-101(1), MCA. However,

> [w]hen a petitioner has been afforded a direct appeal of the petitioner's conviction, grounds for relief that could reasonably have been raised on direct appeal may not be raised in the original or amended petition.

Section 46-21-105(2), MCA. In this case, Brown was afforded a direct appeal and, as discussed above, these alleged constitutional violations were not raised therein.

While Brown concedes that the referenced issues were not raised in his direct appeal, he argues that the procedural bar should not apply because he attempted to raise them but his appellate counsel would not do so. As discussed above, Brown's

16

counsel on appeal properly analyzed whether to include the alleged Fifth and Fourth Amendment violations as issues on appeal and determined that, because they had not been preserved at trial, they could not be raised on appeal. Moreover, the District Court found, having weighed the conflicting evidence and determined the credibility of Brown and Hood, that Brown agreed with Hood regarding what issue should be raised on appeal. We will not substitute our judgment for that of the trier of fact on such matters. Marriage of Starks, 855 P.2d at 530.

Brown also suggests that Sheehy's failure to preserve these issues for appeal via motion or objection should prevent application of the procedural bar to foreclose substantive review. We disagree.

We recently clarified the applicability of the statutory procedural bar to issues not preserved for appeal at trial. In Baker, the petitioner had appealed from his convictions and sentences for three offenses and this Court had affirmed. Baker, 901 P.2d at 56. Thereafter, he filed a petition for postconviction relief alleging ineffective assistance of trial counsel and numerous other issues. We concluded that grounds for relief which, in the language of § 46-21-105(2), MCA, "could reasonably have been raised on direct appeal" included issues not properly preserved at the trial level for appeal. Baker, 901 P.2d at 58 (citing State v. Gorder (1990), 243 Mont. 333, 792 P.2d 370). On that basis, we determined that certain of the petitioner's issues could have been preserved at the trial level and, absent such preservation, the

17

sole means by which they could be raised in a postconviction proceeding was via a claim of ineffective assistance of trial counsel. Baker, 901 P.2d at 58-59.

Baker is squarely on point and dispositive here. Trial counsel having failed to preserve Fifth and Fourth Amendment issues, those issues are barred from substantive determination on a stand-alone basis in this postconviction proceeding. To the extent authorized by Baker, Brown raised those issues in this postconviction proceeding in the context of his ineffective assistance claim against Sheehy and it was not necessary for us to address them substantively in our resolution of that claim above.

Nor is Brown's reliance on Fitzpatrick v. State (1983), 206 Mont. 205, 671 P.2d 1, and State v. Henricks (1983), 206 Mont. 469, 672 P.2d 20, for the proposition that he is entitled to a substantive determination of the Fifth and Fourth Amendment issues well placed. In Henricks, we relied on Fitzpatrick in determining that we could consider issues in a postconviction proceeding which could have been raised on direct appeal. Henricks, 672 P.2d at 23 (citing Fitzpatrick, 671 P.2d 1). We subsequently observed that the Fitzpatrick postconviction relief proceeding was instituted before the effective date of the procedural bar contained in § 46-21-105(2), MCA, and, therefore, that Fitzpatrick was improperly used as authority for our conclusion in Henricks. Kills on Top, 901 P.2d at 1386. As a result, we overruled Henricks. Kills On Top, 901 P.2d at 1387.

18

We hold that the District Court did not err in concluding that Brown's claimed violations of his privilege against self-incrimination and his right to be free from unreasonable searches were not properly before it.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices