**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALE MICHAEL HANSON,
　　　　*Petitioner-Appellant,*

　　　　v.

MIKE MAHONEY, Warden,
　　　　*Respondent-Appellee.*

No. 02-35795

D.C. No.
CV-00-00049-LBE

OPINION

Appeal from the United States District Court
for the District of Montana
Leif B. Erickson, Magistrate Judge, Presiding

Argued and Submitted
June 2, 2003—Seattle, Washington
Original Opinion Withdrawn January 28, 2004
Reargued and Submitted October 19, 2004
Seattle, Washington

Filed January 10, 2006

Before: Betty B. Fletcher, Melvin Brunetti, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge B. Fletcher;
Concurrence by Judge B. Fletcher

189

## COUNSEL

David Ness, Assistant Federal Defender, Helena, Montana, for the petitioner-appellant.

Carol E. Schmidt, Assistant Attorney General, Helena, Montana, for the respondent-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

Dale Michael Hanson, whose petition for a writ of habeas corpus challenging his Montana conviction for sexual assault and deviate sexual conduct was dismissed by a magistrate judge, brings two issues before this court. First, he contends that the magistrate judge who adjudicated his petition by consent was without authority to issue a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253 and, therefore, he asks this court to rule that his request for a COA must be returned to the district court for consideration by an Article III judge. Second, he contends, in the alternative, that the magistrate judge erred in holding that he procedurally defaulted his claim that the state trial court's instruction on unanimity was defective under *State v. Weaver*, 964 P.2d 713 (Mont. 1998). Because we hold that magistrate judges are authorized to

issue COAs, and we agree that Hanson's claim for relief is procedurally defaulted, we affirm.[1]

## FACTUAL BACKGROUND AND
## PROCEDURAL HISTORY

Hanson was convicted in Montana of sexual assault and deviant sexual conduct in 1995. At trial, the district court instructed the jury that a unanimous verdict was required to convict Hanson, but did not specify that unanimous agreement as to at least one underlying sex act was necessary to support a conviction on each charge.

On appeal with new counsel, Hanson raised a number of issues for the first time, and he contended that his trial counsel had been ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to raise them below. Hanson, however, raised no claim that the jury instructions on unanimity were deficient. The Montana Supreme Court rejected his claims of trial error and held that his counsel had not been ineffective under *Strickland*. *State v. Hanson*, 940 P.2d 1166, 1174 (Mont. 1997).

After the Montana Supreme Court issued its disposition of Hanson's direct appeal, it reversed another defendant's conviction for a similar crime on direct appeal. *See Weaver*, 964 P.2d at 717-21. The court held that the trial court committed plain error by not instructing the jury "that it had to reach a unanimous verdict as to at least one specific underlying act of

[1]On January 28, 2004, we withdrew our opinion (over a dissent by Judge Brunetti) and ordered appointment of new counsel and rebriefing after we received notification that Hanson's prior attorneys had failed to raise crucial issues, namely, (1) ineffective assistance of counsel for claims that had been defaulted in state court, and (2) actual innocence. Hanson was well represented in his appeal through careful briefing and articulate argument by his newly appointed counsel. After a thorough review, we have determined that those claims do not have merit because they have either been procedurally defaulted or are unexhausted.

sexual assault for each count charged in the information." *Id.* at 717.

Hanson filed a petition for state collateral review. He was assisted by Ed Sheehy, an attorney under contract with the Montana Department of Corrections to help prisoners with appeals and petitions for post-conviction relief. Sheehy ghost-wrote Hanson's petition and briefs. Hanson raised claims of ineffective assistance of counsel, and because of Sheehy's assistance, he added a claim under *Weaver* challenging the jury instructions.

The Montana Supreme Court dismissed the petition. *See State v. Hanson*, 988 P.2d 299 (Mont. 1999). It held that Hanson's claim of instructional error was barred under Mont. Code Ann. § 46-21-105(2), which provides in pertinent part that "[w]hen a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter." The Montana Supreme Court explained that the cases on which the appellant in *Weaver* had relied had been decided before Hanson's direct appeal and that Hanson was aware of the applicability of the plain error doctrine to his case because he had argued that the trial court had committed plain error on grounds other than the unanimity instruction. *Hanson*, 988 P.2d at 300-01. The Montana Supreme Court explicitly declined to reach Hanson's claim that he was entitled to retroactive relief under *Weaver* notwithstanding § 46-21-105, because to reach the merits of the claim would frustrate the consistent application of the statutory bar. *Id.* at 301.

Hanson, acting pro se, filed a timely petition for habeas corpus in federal district court. He claimed that under *Teague v. Lane*, 489 U.S. 288 (1989), he was entitled to the retroactive application of the unanimity instruction required by *Weaver*, and that he was entitled to relief based on his trial

counsel's ineffective assistance. A magistrate judge, Leif Erickson, determined that Hanson's claim for relief under *Teague* and *Weaver* was procedurally barred as was part of his claim of ineffective assistance of counsel. Magistrate Judge Erickson appointed counsel for Hanson, and the parties consented "to have a U.S. Magistrate Judge conduct any and all further proceedings in the case, including trial, order the entry of a final judgment, and conduct all post judgment proceedings." The case was duly assigned to Magistrate Judge Erickson.

In a reasoned order, Magistrate Judge Erickson denied Hanson's motion to reconsider his ruling that the claim under *Teague* and *Weaver* and some of Hanson's ineffective assistance of counsel claims were defaulted. In a second reasoned order, the magistrate judge dismissed Hanson's remaining claims of ineffective assistance of counsel on the merits and, after addressing Hanson's renewed arguments regarding procedural default, entered final judgment in the case.

Hanson filed a timely notice of appeal and asked that an Article III judge consider his request for a COA. Magistrate Judge Erickson denied Hanson's motion to have his request for a COA considered by a district judge and held that because the parties consented to his adjudication of post-judgment proceedings, he had the authority to adjudicate the request for a COA. The magistrate judge, upon consideration of the merits of Hanson's request, issued a COA as to the unanimity claim and denied one as to the claims of ineffective assistance of counsel.

## ANALYSIS

### I.  *Magistrate Judge Authority*

Hanson contends that magistrate judges are not authorized to issue COAs.[2] We disagree.

---

[2]Because Hanson filed his federal petition for habeas relief after the effective date of the Antiterrorism and Effective Death Penalty Act of

We begin our analysis with the scope of authority that Congress conferred on Magistrate Judges. "Congress intended magistrates to play an integral and important role in the federal judicial system." *Peretz v. United States*, 501 U.S. 923, 928 (1991); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1116 (9th Cir. 2003) (en banc).

**[1]** Issuing a COA is within the scope of the authority granted to magistrate judges under the Federal Magistrates Act. The Magistrates Act permits magistrate judges to conduct all proceedings in civil cases if the parties consent: "Upon consent of the parties, a . . . United States magistrate judge . . . may conduct any or all proceedings in a jury or non-jury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1).**[3]** The statute affirmatively states that "an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. § 636(c)(3). Here, the state and Hanson consented to the magistrate judge's adjudication of "any and all further proceedings in the case, including trial, order the entry of a final judgment, and . . . all post judgment proceedings." The decision to issue a COA is plainly a post judgment proceeding within the scope of the parties' consent, and it is clearly a "proceeding[ ] in a . . . civil matter." *See* 28 U.S.C. § 2254.

**[2]** Nothing in the statutes that govern the issuance of COAs mandates the contrary conclusion that a COA may be issued only by an Article III judge. Under 28 U.S.C.

---

1996 (AEDPA), we must consider his petition under the standards of that statute.

**[3]**Neither party contends that the district court failed to designate Magistrate Judge Erickson to exercise such jurisdiction.

§ 2253(c)(1), a "circuit justice or judge" must issue a COA before an appeal of a final order in a case under § 2254 may be taken. It is well settled that the phrase "circuit justice or judge" — though ambiguous — includes district judges as well as circuit judges. *United States v. Asrar*, 116 F.3d 1268, 1269-70 (9th Cir. 1997). *Accord Dressler v. McCaughtry*, 238 F.3d 908, 912 n.3 (7th Cir. 2001) (holding that § 2253 is ambiguous as to whether magistrate judges are authorized to issue a COA, but that magistrate judges may do so). The statute is silent as to whether the "judge" must be an Article III judge, and nothing in the phrase suggests that Congress intended the words "circuit justice or judge" to exclude magistrate judges when they act in a capacity otherwise authorized by the Magistrates Act.

**[3]** The procedural requirements of the Federal Rules of Appellate Procedure similarly do not preclude magistrate judges from issuing COAs. Rule 22 provides in part that "[i]n a habeas corpus proceeding in which the detention complained of arises from process issued by a state court . . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability." Fed. R. App. P. 22(b)(1). Although the list of judges does not include magistrate judges, there is no indication that it was intended to *limit* the scope of § 2253(c)(1). Indeed, the advisory committee note to the 1998 amendments that added the phrase "circuit justice or a circuit or district judge" to Rule 22 makes clear that the phrase was inserted in the Rule to show inclusively that district judges, and not only circuit judges, are authorized to issue COAs. *See* Fed. R. App. P. 22 advisory committee note. The amendments did not address the question of whether magistrate judges were barred from doing so. Accordingly, the amendments do not indicate an intent to bar magistrates from issuing COAs and the principle of *inclusio unius est exclusius alterius* does not apply with any force to this aspect of Rule 22.

**[4]** Moreover, this court has already adopted an interpretation of Rule 22 that permits magistrate judges to issue COAs.

The Ninth Circuit rules state that "a certificate of appealability must first be considered by the *district court*," Ninth Circuit Rule 22-1(a) (emphasis added), without specifying whether the judge at the district level must be an Article III judge or a magistrate judge. The choice of the term "district court" rather than a specific reference to district or magistrate judges raises the inference that a magistrate judge is not precluded from issuing a COA under Fed. R. App. P. 22. Although we are not bound by our circuit rule if it conflicts with binding authority to the contrary, this court's interpretation of Fed. R. App. P. 22 as announced in the circuit rules is significantly persuasive.

Finally, we note that regardless of whether a petitioner's request for a COA is adjudicated below by an Article III judge, after the request has been considered by the district court, the petitioner is free to request a COA from the judges of this court. *See* Ninth Circuit Rule 22. We may grant a request for a COA on any issue if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, if a petitioner shows "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see also Miller-El v. Cockrell*, 537 U.S. 322 (2003). In practical terms, therefore, a petitioner does not lose the opportunity for his request for a COA to be considered anew by an independent Article III judge merely because a magistrate judge considered the request in the first instance.

**[5]** Accordingly we hold that magistrate judges may issue COAs if they have been authorized by consent of the parties to adjudicate the entire case pursuant to 28 U.S.C. § 636(c)(1).

## *II.   Merits*

**[6]** We turn to the merits of Hanson's appeal. The COA issued below permits us to consider (1) whether Hanson was deprived of a constitutional right because the state trial court did not require the jury to agree unanimously as to which of Hanson's alleged sex acts constituted the conduct for which he was convicted on each count and (2) whether Hanson's claim for relief on this basis was procedurally defaulted.[4] We agree with the district court that Hanson's claim for relief on his unanimity claim was defaulted and that the default is not excused. We therefore affirm the dismissal below.

Hanson advances two arguments as to why his unanimity claim may be heard on the merits. First, he contends that the Montana statute asserted to bar his claim on procedural grounds is not firmly established and has not been regularly followed, and thus does not preclude our consideration of his claim. Second, he argues that any default is excused because the attorney who assisted him with the preparation of his state petition for collateral relief operated under a conflict of interest. Neither of these arguments has merit.

### *A.   Firmly Established and Regularly Followed State Bar*

As we have explained:

> The procedural default doctrine bars federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.
>
> Not all state procedural bars are adequate to foreclose federal review. For the procedural default doctrine to apply, a state rule must be clear, consistently

---

[4]Because Hanson has not challenged the scope of the COA issued, we do not consider whether a COA might issue on his other claims for relief.

applied, and well-established at the time of the peti-
tioner's purported default.

*Calderon v. United States District Court*, 96 F.3d 1126, 1129
(9th Cir. 1996), *cert. denied sub nom. Calderon v. Bean*, 520
U.S. 1204 (1997) (citations and internal quotation marks
omitted). Hanson contends that when his state direct appeal
was adjudicated, the Montana courts did not consistently
apply § 46-21-105 to bar claims not raised on direct appeal.
Because we must look to the time period in which the pur-
ported default occurred to judge the adequacy of the state bar,
*see Calderon v. United States District Court*, 103 F.3d 72, 75
(9th Cir. 1996) (per curiam), *cert. denied* 521 U.S. 1129
(1997), we consider whether § 46-21-105 was clear, consis-
tently applied, and well established from 1995 to 1997. We
conclude that it was.

Hanson cites two Montana cases from the relevant time
period to prove otherwise: *State v. Christensen*, 907 P.2d 970
(Mont. 1995) and *Kills On Top v. State*, 901 P.2d 1368 (Mont.
1995). The state court held in *Christensen* that § 46-21-105
may be overlooked when a petitioner demonstrates that a fun-
damental miscarriage of justice has occurred. *Christensen*,
907 P.2d at 972. This ruling does not help Hanson because,
although the Montana court recognized an exception to § 46-
21-105, it refused to apply it. *Christensen* does not indicate
that § 46-21-105 in fact was inconsistently applied at the time.

Nor does *Kills On Top* considered in conjunction with
*Christensen* aid Hanson. In *Kills On Top*, the Montana
Supreme Court specifically overruled an older precedent,
*State v. Henricks*, 672 P.2d 20, 23 (Mont. 1983), that had per-
mitted it to review claims not raised on direct appeal despite
§ 46-21-105. The court was at pains to indicate that it had
been consistent in applying § 46-21-105, and it stated:

> Since *Henricks* was decided, we have not cited it for
> the proposition that this Court can review issues in

postconviction proceedings which could have been raised on direct appeal. We now specifically overrule *Henricks* to the extent that it stands for the proposition that this Court can review issues in postconviction proceedings which could have been raised on direct appeal.

*Kills On Top*, 901 P.2d at 1386-87. Thus, the Montana Supreme Court indicated clearly that despite *Henricks*, its jurisprudence applying § 46-21-105 was clear and consistent. Hanson has raised nothing before this court to indicate that the Montana Supreme Court's assessment of its jurisprudence is inaccurate.

The other cases that Hanson asks us to consider were decided well after 1997 and are outside of the relevant time period. *See State v. Whitehorn*, 50 P.3d 121 (Mont. 2002); *State v. Worrall*, 976 P.2d 968 (Mont. 1999). Accordingly, we hold that § 46-21-105 is adequate to bar Hanson's claim.

## B.    *Excuse for Default*

Because we hold that Hanson's claim for relief is procedurally defaulted, we must consider whether his default is excused. "Procedural default is excused if 'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.' " *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Hanson does not allege that failure to consider his claims will result in a fundamental miscarriage of justice. He argues instead that he has demonstrated cause and prejudice because Ed Sheehy, who ghostwrote his state petition for collateral review, operated under a fatal conflict of interest because he was employed by the Montana Department of Corrections at

the time he wrote Hanson's petition and briefs. Even assuming for the sake of argument that Sheehy was under a conflict of interest, nothing he did *caused* Hanson's default. Sheehy's involvement with Hanson's case occurred entirely after the default occurred. At most Sheehy's acts or omissions failed to rectify the earlier default. However, no claim for relief based on Sheehy's involvement in the case is before us, and we cannot say that any additional arguments that Sheehy might have raised regarding Hanson's counsel on direct appeal would have excused the failure to raise Hanson's claim on direct appeal.

Accordingly, we hold that Hanson has not established cause or prejudice for the default of his claim.

## CONCLUSION

We hold that the magistrate judge was authorized to issue the COA. Because Hanson's claim is defaulted, and the default is not excused, we affirm the dismissal of his petition for a writ of habeas corpus.

**AFFIRMED.**

---

B. FLETCHER, Circuit Judge, specially concurring:

We requested rebriefing in this case after we became aware of tapes containing vindictive voice-mail messages, left on Hanson's answering machine by the victim's mother, indicating her vendetta to do anything to get even with him after their breakup. Because that plan might have included fabricating charges of child abuse, the tapes, had they been placed into evidence, could have influenced the jury's decision regarding Hanson's guilt. Hanson's trial counsel never sought to introduce the messages; under the circumstances, that failure may have constituted ineffective assistance of counsel.

However, at this juncture, that particular claim cannot be entertained. *See* Majority at 193 n.1. Thus, this appeal illustrates the consequences — often tragic — that result from procedural failures, as cases proceed from trial to appeal to post-conviction proceedings. At our level of review, frequently we are unable to untie the Gordian knot. That is so in this case.

Equally tragic, Hanson continues to sit in jail even though he is eligible for release — and has been for some time. The State of Montana requires him to register as a sex offender, but Hanson maintains his innocence and refuses to do so. Thus, he remains incarcerated pending resolution of a subsequent charge for refusing to register as a sex offender. No stay of incarceration was entered during the pendency of these proceedings.

At oral argument, I suggested to the State that it consider alternatives to pursuing these new state-law charges in light of the strength of Hanson's claim of ineffective assistance of counsel and his unwavering claim of innocence. The State's stringent and unbending approach, however unfortunate, is unremediable.